[PHILADELPHIA, FEBRUARY 2, 1832.]

POTTS Administrator de bonis non, &c. of MAY, to the use of WOLLERTON and Another, *against* SMITH and another, surviving Executors of SMITH.

### IN ERROR.

An administrator *de bonis non*, can claim nothing but the goods, &c. of the intestate remaining in specie, unconverted and unchanged at the time of the death of the original administrator :

Therefore, an administrator *de bonis non*, cannot maintain a *scire facias* upon a judgment on an administration bond to recover a balance due from the original administrator to the estate of the intestate.

*Quere*, whether the representatives of a deceased co-administrator, and co-obligor, can be made liable for the assets of the intestate, which came exclusively to the possession and management of his surviving co-administrators and co-obligors, who settled an administration account, charging themselves alone with the amount of such assets ?

THE record of this case having been returned on a writ of error to the Court of Common Pleas of Chester county, it appeared that the plaintiff in error, *David Potts*, administrator *de bonis non*, &c. of *Robert May*, deceased, issued a *scire facias* to the use of *John Wollerton* and *George Baugh*, upon a judgment on an administration bond in the name of the commonwealth, against the defendants in error, *Elizabeth Smith* and *Levi Bull*, who survived *Thomas B. Smith*, and who, together with the said *Thomas B. Smith*, were the executors of *John Smith*, deceased.

The whole case is comprised in the charge of the court below, which at the request of the plaintiff's counsel, was reduced to writing, and filed in pursuance of the Act of Assembly of 24th February, 1806.

After having recommended a nonsuit, which the plaintiff refused to submit to, the court delivered the following

CHARGE.—" A judgment has been rendered against the defendants for the penalty of the administration bond, and the plaintiff *David Potts*, administrator *de bonis non* of *Robert May*, deceased, supposing himself to be one of " the person concerned," and *a party aggrieved by the misfeasance or nonfeasance* of the party giving it, has brought this *scire facias* to enable him to prove what damages *he* has sustained, so that he may levy execution. He has proceeded to show that the original administrators of *Robert May* deceased, have filed an inventory, and has given evidence of a large amount of property, which probably came to their hands; and also a statement in the Orphan's Court of this county, upon a report of auditors of the accounts of *Ruth May* and *James B. Harris;* the last, the surviving

(Potts and others *v.* Smith.)

administrator of *Robert May,* deceased, whereby it appears there was a balance due the estate of three thousand seven hundred and ninety-one dollars, sixty-eight and a half cents. This sum with its interest he claims as administrator *de bonis non,* &c. from the executors of Mr. *Smith,* one of the obligors in the bond, and one of the first administrators. He has not shown that there are any goods and chattels of the intestate which remained *in specie,* unadminister- ed in the hands of the defendants, nor any sum of money of the in- testate, which has been kept by his administrators, or any of them, separate and unmixed with their own (and if he had it would tend to support another action rather than this on the administration bond), but he claims in this *scire facias* the balance found on settlement due the estate, so that he may proceed and finish the estate and fi- nally distribute it.

"The court is of opinion that the plaintiff cannot recover. His business is only with the goods, &c. of the intestate, unadministered. There is no obligation on the part of the representatives of the de- ceased administrator, to hand over the balance to him. There is no privity between them; no contract expressed or implied; on the contrary, the representatives of the deceased administrators are liable at law to an action at the suit of creditors, or next of kin, for the ba- lance of the estate in their hands; and if he should have paid that balance voluntarily to the plaintiff, the administrator *de bonis non, &c.,* would he not still be liable to the creditors and distributees? Would it not be a *devastavit?* The conditions of the administration bond are, that they will file an inventory, settle an account, and pay to such persons as are entitled, such as the Orphan's Court shall appoint: but the Orphan's Court would not direct a payment to plaintiffs, whose only duty is, and who only gave security for the unadministered goods of the intestate. The court knows of no in- stance in which the administrator *de bonis non* has succeeded in such a claim either at law or in equity: and however convenient it might be that the law should be so, and the administrator *de bonis non,* re- ceive the balance in the hands of the former administrator, and settle the whole concern at once, the court ought not to legislate into exis- tence a new remedy, especially as they cannot destroy the liability of the first administrator, to creditors and distributees. It would be presumption in this court not only to adopt a new remedy, but to sanction a new right, before either the legislature or the Supreme Court have adopted such a rule of action for the whole state."

The following errors were assigned in this court, *viz.*

*First.* The Court erred in charging the Jury, that after a Judg- ment had been obtained by the commonwealth, against the above de- fendants upon the administration bond of *John Smith* their intestate, or the administrator of *Robert May* deceased, an action of *scire facias* upon such judgment could not be sustained by the above plaintiff as

(Potts and others *v.* Smith.)

administrator *de bonis non* of the said *Robert May*, for the balance due to the estate of the said *Robert May* by the original administrators thereof.

*Second.* The court erred in charging the jury that this action could not be supported upon the facts given in evidence and contained in the bill of exceptions.

*Third.* Plaintiff in error assigns the general errors.

*Dillingham* and *Tilghman* for the plaintiff in error.—The case of *Allen* v. *Irwin*, 1 *Serg. & Rawle,* 549, decided that assumpsit could not be maintained by an administrator *de bonis non,* against the administrators of a deceased executor for money had and received by such executor to their use: and the court below, in this case considering it precisely analogous to an action of assumpsit, following the reasoning which led the Chief Justice in the case referred to, to doubt, whether any action would lie by an administrator *de bonis non* against the representatives of the executor, arrived at the conclusion that it would not lie. In the case cited it is remarkable that the Chief Justice sets out with declaring, that on that point, he "does not mean to give an opinion," but that he considered it " so doubtful that it was desirable the law should be made clear by an act of assembly." The cause was decided upon another ground, but Judge YEATES dissented; and although there is no written opinion reported, he must have dissented from the views of the Chief Justice as expressed on this point, or he could not have been opposed to the reversal of the judgment. He must therefore have been of opinion that the action would lie, and thus we have the positive opinion of Judge YEATES on the point, as to which the other judges doubted, but expressly declined giving any opinion. The plaintiff in error founds his claim upon the provisions of the act of assembly of *March* 27, 1713, section 14, *Purd. Dig.* 613, as one of the persons " *concerned*," for whose benefit the judgment on the administration bond is to be used. The administrator *de bonis non* is the only person by whom the estate can be properly administered, and as representing the interests of all who have claims upon it, is clearly one of the persons " concerned." This is a word of large import, and the present proceeding being a *scire facias* upon an administration bond which creates privity between the parties, the court have a wider scope than in an action of assumpsit in which the difficulty in the mind of the Chief Justice was the want of privity of contract. But if this be not so, the great inconveniences resulting from a denial of the right now claimed amounts to a moral necessity for its exercise, to prevent a failure of justice. Take the case of an extensive banker who dies intestate, leaving a large amount of notes in circulation : His administrator gives bond, receives his whole estate, converts it into United States stock, and then dies leaving an executor : Can it be possible that each note holder must bring a separate action against the executor of the administrator, when the whole estate might be so easily settled

(Potts and others *v.* Smith.)

by permitting the administrator *de bonis non* to recover and administer the assets belonging to the estate he represents? The same inconvenience would result in all cases in which large concerns were represented by the original executor or administrator. To require the course indicated to be pursued, would violate the principles which have uniformly governed the legislature of *Pennsylvania*, whose effort from the earliest times has been to simplify remedies and avoid costs. There is no decision in *Pennsylvania* opposed to the present proceeding. *Allen* v. *Irwin* did not touch the point. There was no proceeding on an administration bond. It was a suit by an administrator *cum testamento annexo,* against an administrator of an executor. The present suit is by an administrator *de bonis non* against the executors of the original administrator. In the former case, no question of statutory remedy could arise; but all the reasoning of the Chief Justice goes to support the remedy now asserted, even if the statute were silent on the subject, and his doubts as to a new form of action suited to the exigency of the occasion have been since overcome in several instances, in which they have been sustained, to prevent a right from being lost from the want of a remedy. *Brown* v. *Furer,* 4 *Serg. & Rawle,* 217. *Gause* v. *Wiley,* 4 *Serg. & Rawle,* 521. *Steinman* v. *Saunderson,* 14 *Serg. & Rawle,* 357.

If an executor or administrator be dismissed, he is ordered to deliver over all the trust funds into the hands of the administrator *de bonis non.* If, after such order, the dismissed executor or administrator should die, cannot the administrator *de bonis non* recover those funds from his personal representatives? There surely cannot be one rule if he should live, and another in the event of his death. *Hampton's case,* 17 *Serg. & Rawle,* 147.

If each of the creditors of *Robert May* must institute a separate proceeding by *scire facias* under the judgment on this administration bond, the whole system of our intestate law will be overthrown, for whoever brought the first suit would be *entitled* to priority of payment, instead of all debts in equal degree being paid *pro rata.* *M'Kean* v. *Shannon,* 1 *Binn.* 370. *Leiper* v. *Levis,* 15 *Serg. & Rawle,* 108, 113.

*Bell,* for the defendants in error.—It is a rule both at common law and in equity, that an administrator *de bonis non* cannot maintain an action against the administrator or executor of a deceased administrator or executor to recover assets of the intestate or testator which have been administered by his predecessor. By the phrase, administered assets, is meant such as have come to the hands of the first representative and do not remain in specie. There is no contract express or implied that the representatives of the first administrator shall hand over to the administrator *de bonis non* any balance of the estate appearing on the settlement of an administration account by the first executor or administrator, because there is no privity of contract between the parties. That there is no privity is strongly shown by the fact, that prior to the statute 17 *Car.* 2 *ch.* 8., an ad-

.(Potts and others *v.* Smith.)

ministrator *de bonis non* could not sue out execution on a judgment. recovered by the first administrator, because he was not privy to the judgment, but was put to a new suit.   3 *Ba. Ab.* 20.   *Cleve* v. *Veer, Cro. Car.* 452. 459.   *Yaites* v. *Gough, Harrison* v. *Bowden, Yelv.* 33. *Latch.* 140.     *Turner* v. *Davies,* 2 *Saund.* 149.     *Sid.* 29. 149. *Grant* v. *Chamberlain,* 4 *Mass. Rep.* 613.     Thus it is clear, that at common law, there was no manner of connexion between the admin-istrator *de bonis non* and the first representative of the estate.   Where the property has been altered, it rests with the administrator, and in the event of his death it goes to his representatives, and not to the ad-ministrator *de bonis non.* ·  3 *Ba. Ab.* 20, 21.   1 *Vern.* 473. *Roll. Ab.* 380. *Gord. Law of Dec.* 98.     That the law is so, is clear from the ex-ception to the general rule, that if goods remain in specie, or if money be kept separate, they go to the administrator *de bonis non. Wankford* v. *Wankford,* 1 *Salk.* 306.     He is entitled to the goods left unadministered, that is, unaltered.   *Toller,* 86. 117.   *Attorney General* v. *Hooker,* 2 *P. Wms.* 340.     That this is the English rule is placed beyond a doubt by the case of *Allen* v. *Irwin,* 1 *Serg. & Rawle,* 549 : and it is right that it should be so.   The administrator *de bonis non* gives bond to secure merely the due administration of the unadminis-tered part of the assets and his surety cannot be charged beyond the letter of his bond.   *Reed* v. *The Commonwealth,* 11 *Serg. & Rawle,* 441.   But the representatives of the original executor or adminstra-tor remain liable to creditors, legatees and distributees.   *Allen* v. *Irwin,* 1 *Serg. & Rawle,* 555.   So doubtless do the sureties in the bond given by the first administrator, and it would be unfair to make them stand liable for the acts of an individual with whom they have no connexion, without at the same time making some provision for their security.   If a system complete in all its parts could be established, by which the administrator *de bonis non* would be compelled to give security, all parties interested authorised to bring suit against him, and the sureties of the original administrator released, it might per-haps be more convenient to permit the administrator *de bonis non* to recover from his predecessor the balance remaining due from him ; but such a system has not been established, and arguments *ab in-convenienti,* are not sufficient to induce the court to change the law or provide a new remedy.   In the case of a legacy charged on land, the court assumed jurisdiction from absolute necessity to provide a remedy, without which there would have been, what the law ab-hors, a right without a remedy.   But to sustain the present proceed-ing, would be not only to apply a new remedy, but to sanction a right hitherto unknown.

.The circumstance of the bond being given under the act of the 27th *March,* 1713, does not affect the rule.   The condition of the bond is nearly word for word the same as that required by the stat-utes 21 *H.* 3. *ch.* 3., and 22 and 23 *C.* 2. *ch.* 10 ; and we have seen what the English rule is on the subject.   The fourteenth section of the act of the 27th of *March,* 1713, provides that such a bond as this shall be for the use of the person or persons concerned, and gives

(Potts and others *v.* Smith.)

the benefit of it to the relief and " advantage of the party aggrieved by the misfeasance or nonfeasance" of the person giving the bond ; but it does not widen the limits of the rule as to who are the parties concerned. Its only object was to provide a further security for, and give a new remedy to the parties, who, according to the existing rule, were the " persons concerned." As far as creditors are concerned, it is only in aid of the provisions of the statutes of 30 *C.* 2. *ch.* 7., and 4 and 5 *W. & M. ch.* 24.

The opinion of the court was delivered by

KENNEDY J.—*Ruth May, James B. Harris* and *John Smith* joined in taking out letters of administration upon the estate of *Robert May*, deceased, and gave bond with sureties in the name of the commonwealth, in the form prescribed by law, to the Register. *John Smith* died, *Ruth May* and *James B. Harris* surviving, who settled their administration account, which was approved and confirmed by the Orphan's Court of *Chester* county. From this account, as settled, there appeared to be three thousand seven hundred and ninety-one dollars and sixty-eight cents remaining in the hands of the accountants, moneys arising from the sale of goods of their intestate, and the collection of debts due and owing to him at the time of his decease. A suit was brought upon the administration bond, in the name of the commonwealth, against *Elizabeth Smith*, executrix, and *Levi Bull*, who survived *Thomas B. Smith*, executors, &c. of *John Smith*, and a cautionary judgment had against them for the amount of the bond. In the meantime, *Ruth May* and *James B. Harris* both died ; after which letters of administration *de bonis non* of *Robert May* were granted to *David Potts*, who sued out a *scire facias* upon the judgment obtained as aforesaid, for the purpose of recovering the three thousand seven hundred and ninety-one dollars and sixty-eight cents, charged against *Ruth May* and *James B. Harris* in their administration account already mentioned, and who had been co-administrators with *John Smith* the testator of the defendants in this case. On the trial of the cause below, the only question was, whether upon the foregoing state of facts the plaintiff was entitled to a verdict in law for the three thousand seven hundred and ninety-one dollars and sixty-eight cents. The court charged the jury that in law, upon the facts as already stated and which were not then controverted, their verdict ought to be in favour of the defendants, which was accordingly given.

The error assigned is to this charge of the court. This case involves a question which does not appear to have been noticed in the court below, nor was it raised here ; which is,—Can the representatives of a deceased co-administrator and co-obligor, be made liable for the assets or goods of the intestate, which came exclusively to the possession and management of his surviving co-administrators and co-obligors, who have settled their administration account, in which they alone are charged with the amount? As the court, however, are of opinion that the plaintiff cannot maintain his *scire facias* upon the

(Potts and others *v.* Smith.)

judgment against the executors of *John Smith,* nor yet against the representatives of any of the first administrators of *Robert May* the intestate, it becomes unnecessary to consider or decide this question.

In the first place it will be proper to recur to the law as it stood originally in regard to the personal property of intestates. At the common law upon the death of a person dying intestate, the whole of his personal estate belonged to the ordinary, or bishop, to be disposed of by him according to his conscience, to pious uses. Neither his wife, children, nor any of his kindred, had claim or right to any part of it. Occasionally they might be among the number who were appointed to receive, but this depended entirely upon the will and pleasure of the ordinary, for he had the right by law to the absolute disposition of it. He was not even bound to pay the debts of the intestate, out of his estate, until the statute of *Westminster* 2. 13 *Edw.* 1. *cap.* 19., imposed that obligation upon him so far as he had assets, and gave an action of debt against him if he disposed of the goods and neglected or refused to pay the debts. 11 *Vin. Abr.* 52. note *pl.* 1. Next came the statute of 31 *Ed.* 3. *cap.* 11., by which the ordinary was required to depute the next and most loyal friends of the person dying intestate to administer his goods; and the persons so deputed were thereby authorized to recover by action, debts due to the deceased, in the same manner as executors, and to answer and account for the same, as also for all other assets of the deceased, as executors. 11 *Vin. Abr.* 91 *pl.* 1. To this succeeded the statute of 22 *Hen.* 8 *cap.* 5 *sec.* 3., by which the ordinary was directed in cases of persons dying intestate, or of the executors refusing to prove the testament, to grant administration to the widow or next of kin, or both, at his discretion, taking surety for their true administration. *Ibid. pl.* 2. This statute made it the duty of the ordinary to grant administration of the goods of the deceased to the widow or next of kin, leaving it still, however, entirely at his discretion to give it to the one or the other, and in case of there being several of the next of kin in equal degree, to select any one, or more of them, and after having once granted the administration, he was bound by it, and could not revoke it as he might have done at common law. 11 *Vin. Abr.* 52, *note* to *pl.* 1. page 115. *pl.* 15. *Offley* v. *Best,* 1 *Lev.* 186. *Betsworth* v. *Betsworth, Style,* 10. *Stapleton* v. *Sherrard,* 1 *Vern.* 315. *Sand's case,* 3 *Salk.* 22. 11 *Vin. Abr.* 114. *note* to *pl.* 3. But still it was found that the ordinary had such a latitude of discretion in selecting from among the next of kin, as to leave the most helpless and needy of them out of the administration, and thus deprive them of all benefit and assistance from the estate of the deceased; or where the children were of such tender age, as to be incapable of administering, and for the same reason stood most in need of a subsistence from the estate, or were abroad beyond seas, administration was granted to a stranger, who got the whole of the estate, because the administration being once committed to a person, he thereby became entitled to the whole of the personal estate, after paying the debts. This the ordi-

(Potts and others *v.* Smith.)

naries endeavoured to prevent by taking bonds of the administrators, which was, *that after debts and legacies were paid, the administrator should distribute the residue of the goods, at the appointment of the ordinary.* This practice continued until about the 12th of King *James,* when the temporal courts first granted prohibitions to restrain the spiritual courts from compelling administrators to make distribution according to these bonds, and decided that the bonds, not being taken in conformity to the statute, were void. 11 *Vin. Abr.* 52. *note* to *pl.* 1. 183, *pl.* 1. 357, *pl.* 2. *Seawney v. Elbridge,* Hob. 83 *pl.* 110. *s.* 6. *Hughes* v. *Hughes,* 1 *Lev.* 233.

It is clear then, that from the passage of the statute of 21 *Hen* 8. *cap.* 5., until the passage of 22 and 23 *Car.* 2., commonly called the Statute of Distribution, that administrators stood on the same footing, or better, because they had no legacies to pay, with regard to the surplus of the personal estate of the deceased, after payment of all his debts, as executors, that is, entitled to it as absolute owners. By the statute of *Westminster,* 2., the ordinary was required to pay the debts of the deceased when the goods came to him to be *disposed* of, so far as they extended, in such sort as the executors of such persons should have done in case they had made testaments. 11 *Vin. Abr.* 52. *note* to *pl.* 5. The obligation imposed by this statute devolved upon administrators when they came to be appointed by a commission, from the ordinary, that was no longer considered a mere naked authority and revocable, but coupled with a right of property, and an interest, that rendered the grant obsolute and irrevocable, and bound them to pay debts after the manner of executors; but if executors sold the goods or collected the debts of the testator, and died without paying the debts of the testator, it was a *devastavit* in them and the creditors were without remedy. They could bring no action against the personal representatives of such executors, for the injury sustained by the waste committed was in the nature of a tort, where the rule is, *actio personalis moritur cum persona.* 11 *Vin. Abr.* 219. *pl.* 4. Sir *Brian Tuck's case,* 3 *Leo.* 241. *Brown* v. *Collins,* 1 *Ventr.* 292. 1 *Saund.* 219. *d. note.* A remedy however was provided for this, by the statute 30 *Car.* 2, *cap.* 7., explained and made perpetual by 4 and 5 *W. & M. cap.* 24. *sec.* 12., which makes the executor, or administrators of any executor or administrator, whether rightful or of his own wrong, who shall waste or convert to his own use the estate of his testator or intestate, *liable and chargeable in the same manner as their testator or intestate would have been if they had been living.* Now to whom would their testator or intestate have been liable if living? to the creditors, or the legatees or distributors if you please, but certainly not to the *administrator de bonis non,* because there was no such person in being. 1 *Saund.* 219. *d. note.*

From the view which has been taken of executors and administrators, their rights and responsibilities at this time were made substantially the same, a matter that has been doubted by some. The statute last referred to places them upon the same footing and makes

(Potts and others *v*. Smith.)

them alike responsible. Every executor or administrator who has sold and converted into money the goods of his testator or intestate, or collected the debts owing to them respectively, and refuses or neglects to pay the debts of the deceased, is guilty of a *devastavit.* This is clearly proved by the case of almost daily occurrence, where such an executor or administrator is sued by a creditor, and judgment had against him, upon which a *fieri facias* is issued directed to the sheriff, commanding him to levy the amount out of the goods of the testator or intestate, in the hands of the executor or administrator; now, as the executor or administrator has *converted*, that is, has sold all the goods of the deceased which came to his hands, it is impossible for the sheriff to find any whereon to levy; and if the defendant in the execution refuses or neglects to pay the amount of it he is considered guilty of a *devastavit*, and the sheriff will be justified in making a return to that effect upon the *fieri facias*. See *Serjeant Williams's* note already referred to, 1 *Saund.* 219. *b*. 6. All this goes to establish, that the collection of the testator's or intestate's debts, or a sale of his goods by the executor or administrator, is such an administration of them as to preclude the administrator *de bonis non* from claiming or exercising any power or authority over them or the proceeds of them. They are not embraced within his commission, which is for the administration of the goods and chattels, rights, and credits which were of the testator or the intestate at the time of his death, and remain unadministered. For unless they remain *in specie*, it cannot be said that they were of the goods and chattels, rights and credits which belonged to the deceased at the time of his death. Again, if the collection of debts owing to the deceased, or the sale of his goods, by the executor or administrator, had not been such an administration as to put these things beyond the reach and control of the administrator *de bonis non*, there was but little, if any occasion, for the statutes of 30 *Car.* 2. and 4 and 5 *W. & M.*, already mentioned, because the administrator *de bonis non* could have maintained his action, as it certainly would have been his duty to have done; so if he had had the right and the authority, for the recovery of all the moneys received, as well in payment of debts due to the deceased, as upon sales made of his goods, by the executor or administrator against the personal representatives of such executor or administrator, and when recovered have paid the creditors, legatees, and distributees, the enactment of that statute would have been useless. The provisions, however, of these statutes prove conclusively to my mind, that such right and authority were never supposed to have existed on the part of the administrator *de bonis non*. Beside before the statute of 22 and 23 *Car.* 2,, when the administrator became absolute owner of the residue of the personal estate, after paying the debts of the deceased, it would have been repugnant to the rights of the deceased administrator, as well as absurd, to have given the administrator *de bonis·non* the right to have called the personal representatives of the deceased administrator to an account of all the moneys received in

payment of debts owing to the intestate, as also those received upon sales made of the personal property and to have compelled them to pay all over to him.   It was sufficient for any purpose that the administrator *de bonis non* had to accomplish, that he obtained possession of every thing belonging to the original intestate, which remained in *specie*, not *converted* or *changed*.   The more he found in this state the better for him, and a loss as it were to the estate of the first administrator, whose fault it was that he had not secured the whole estate by a change or conversion of it.  Had it been that the administrator could have demanded the proceeds of debts collected, as also of sales made by the first executor or administrator, no executor or administrator could have had the benefit of what was given to him by the testator or the law, and the course of administration by granting commissions *de bonis non administratis*, would have been interminable.   For whatever of the goods of the testator or intestate remained unadministered at the death of the executor or administrator, could not be passed or transferred by his will.  11 *Vin. Abr.* 109. *pl.* 3. 421. *pl.* 6. 267. *pl.* 6.   These goods ceased to have an owner until the ordinary gave them one by appointing an administrator *de bonis non*, in case of an administrator's dying, or of an executor dying without appointing his executor, and in case of his having appointed one, then by granting probate of the will to his executor, the executor of the first executor became in effect the executor of the first testator.. 11 *Vin. Abr.* 421. *pl.* 6.  267. *pl.* 6.   So that the only means which the first administrator or executor had of securing to himself the benefit given him by the law or the will, in the testator's or intestate's estate, was to dispose of it or to convert it, which he had the power of doing, and thus make it his own, so that he did not injure creditors, and if he did, they had their remedy without the intervention of an administrator *de bonis non*, under the provisions of the statutes of 30 *Car.* 2, and 4 and 5 *W. & M.*

That it ever has been considered to be the law by courts and jurists, that the *collection of debts* due to the testator or intestate, or *disposition, change*, or *alteration* of the goods made by the executor or administrator, would protect them from the claim of the administrator *de bonis non*, as unadministered goods, will abundantly appear from adjudged cases and other authorities, some of which I will refer to.

Lord Chancellor KING, in *Attorney General v. Hooker*, 2 *P. Wms.* 340, says, " all the personal estate, the property whereof is not *altered*, shall go to the administrator *de bonis non*."  In *Tingrey* v. *Brown*, 1 *Bos. & Pull.* 311., Chief Justice EYRE says, " every thing is unadministered which has not been reduced into the *actual* possession of the executor and *converted* by him."  In *Wankford* v. *Wankford, Salk.* 306, by HOLT, Chief Justice ; " If the goods of the testator remain in *specie*, they shall go to his administrator *de bonis non*, because in that case it is notorious which were the goods of the testator, and they are distinguishable ; and there is the same reason,

(Potts and others *v.* Smith.)

where money is *kept by itself*, and the husband permits it to be so, but if the husband *seises it, it will be his, and will be a devastavit.*" He is here speaking of an executrix of the obligee, who had intermarried with the obligor and received from him the money due upon the obligation. So, upon the same principle, if the executrix without marrying the obligor had received the money from him, and put it in with her own, or used it in any way, its distinguishing mark would have been gone; it would have been a *conversion*, a *devastavit*, and the administrator *de bonis non* would upon the principle here laid down, have no claim to it. The same principle will be found in 3 *Bacon's Abr.* title *Executors and Administrators*, 19, 20., where it is said, that " an administrator *de bonis non* is entitled to all the goods and personal estate, such as terms for years, household goods, &c. which remain *in specie* and were not administered by the first executor or administrator, as also to all debts due and owing *to the testator or intestate.*" From this it would appear, that if the goods are *changed* or *altered*, and remain no longer *in specie*, or have been *disposed of*, the administrator *de bonis non* cannot claim them; and so of the debts, unless they be such as grow out of contracts to which the testator or intestate was a party, for otherwise they cannot be said to be debts *due and owing to the testator or intestate*, which is fully established by the decision of the Lord Chancellor in *Barker* v. *Talcot & Shaw*, 1 *Vern.* 473, where the administrator of a lessor settled with the tenant or lessee for arrearages of rent due to the intestate at the time of his death, received part of the amount in money, and took the tenant's note payable to himself for the balance, and died, the note remaining unpaid: it was held upon a full hearing, that the note given to the administrator was *quasi payment*, and a good *conversion*, and that the same ought to go to his administrator and not to the administrator *de bonis non:* this, too, it may be observed, was the decision of a court of equity. In *Jenkins* v. *Plume*, 1 *Salk.* 207, it is said by the court, that if a third person receive a debt due and owing to the testator with or without the consent of the executor, yet the executor may sue such person for money had and received *to his, the executor's use*, and in case it was received without his consent, it becomes assets the moment he obtains judgment for the amount without execution, although if he had sued the original debtor, that is, the person who owed the money to *the testator*, it would not have been assets till levied by execution or received. If the money had been received by such third person with the consent of the executor, it would in effect have been a payment to the executor himself and assets in his hands immediately, and a discharge of the debtor, but if received without his consent, it would only be made a payment or discharge of the debt by his subsequent conduct. His bringing suit for the money against the receiver was an assertion of his right to it, and a confirmation of the payment, which he could not retract after obtaining judgment for it. The original debtor was thereby discharged, the executor himself became responsible for the

(Potts and others *v.* Smith.)

money. It was no longer money due or owing upon a contract made to which *the testator was a party*, but money for which the administrator recovered a judgment upon *a promise, as appeared by the record, made to himself.* In short, the administrator by his affirming and ratifying the payment of the debt to the defendant had *changed* or *converted it; administered it,* as the court must have understood it, for they say, in case of the executor's dying intestate before execution of the judgment and receipt of the amount of it, that his administrator, and not the administrator *de bonis non*, shall have a *scire facias* and execution upon it. So where the plaintiff, as executor, and the defendant, submitted by bond all controversies relating to the *testator's estate* to arbitration, and the arbitrator awarded that the plaintiff should deliver certain goods, of which the testator died possessed, to the defendant, and that the defendant should pay to the plaintiff three hundred and twenty pounds, in an action upon the bond for having failed to perform the award, the defendant pleaded that the money awarded to be paid by him was attached by writ of foreign attachment according to the custom of London, and adjudged by the court that although it were assets yet it was not attachable, *for then the administrator de bonis non might sue for it. Horsam* v. *Turget*, 1 *Vent.* 111. *S. C.* by the name of *Horsey* v. *Turges*, 1 *Lev.* 306. And where a promissory note was made by a *debtor of the testator* to an executor (*ut executori*) such note shall go to the *administrator of the executor*, and not to the *administrator de bonis non. Betts* v. *Mitchell*, 10 *Mod.* 315.

So in *Butler* v. *Bernard*, 1 *Cha. Ca.* 224, Lord Chancellor FINCH held that where an administrator had made a mortgage of the intestate's term under a lease for years, and made *A.* his executor, and died, his executor, and not the administrator *de bonis non* of the intestate, was entitled to redeem, because the mortgaging of the term was an *alienation* and *conversion* of it. This decision was made in a court of equity where the administrator *de bonis non*, was a party, praying the court to have the benefit of the redemption, which goes to show that the rights and claims of an administrator *de bonis non*, are governed and regulated by the same principles both in law and equity. An administrator, as such, being possessed of a term of his intestate for a hundred years, made a lease for five years rendering rent to himself, his executors, and assigns, and after appointing his executor, died; his executor, and not the administrator *de bonis non*, was adjudged to be entitled to receive the rent which fell due under the lease. *Drew* v. *Bayly*, 2 *Lev.* 100. *S. C. Freeman's Rep.* 392. 1 *Ventr.* 275., and cited in *Noel* v. *Robinson*, 1 *Vern.* 94. The same question was also decided in the same way in *Norton* v. *Harvey*, 1 *Ventr.* 259. In these cases it was said by Lord HALE, that the rent when received would be assets, so that the fact of the money or other thing being assets does not determine it to belong to the administrator *de bonis non.*

This subject was ably and fully discussed in the court of appeals

of *Virginia ;* first by counsel who argued the cause twice, and af-
terwards by the judges, who delivered their opinions *seriatim*, in the
case of *Coleman* administrator *de bonis non* of *Wernick* v. *M'Murd
& Prentis*, in which it was decided, that the administrator ·*de bonis
non* could not sue the representative of a former executor or admin-
istrator, either at law or *in equity*, for assets wasted or *converted* by
the first executor or administrator, but such suit may be brought di-
rectly by creditors, legatees or distributees. 5 *Rand.* 51. This Court,
at the last *Sunbury* session, decide in *Kendal's* administrator v. *Lee*,
a case not yet reported, that the administrator *de bonis non* was not
entitled to receive the money due upon a bond taken by the first
administrator to himself to secure the payment of part of the purchase
money of land sold by him as the property of the intestate, under a
decree of the Orphan's Court for the purpose of paying the debts of
the intestate and supporting his minor children ; and that a receipt
given by the administrator *de bonis non* for the part of the amount
of the bond paid to him by the obligor was no defence *pro tanto* in an
action upon the bond by the personal representative of the first ad-
ministrator.    And although this was not the case of a bond taken by
the first administrator to secure the payment of the price of personal
property of the intestate sold by him, yet a majority of the court
were of opinion that even in that case the administrator *de bonis non*
would have no claim to the bond or the money due upon it, because
it was neither goods nor moneys of which the intestate died possessed,
and which still remained *not administered :* and the Chief Justice,
who delivered the opinion of the court, has shewn very clearly the
law to have ever been, that the administrator *de bonis non* could not
claim the money due on a bond taken by the first administrator upon
a sale of either personal or real estate made by him.

It is manifest too that the late Chief Justice of this court, from what
he has said in delivering the opinion of the Court in the case of *Allen
et al.* v. *Irwin*, 1 *Serg. & Rawle*, 549, was inclined to think that the
administrator *de bonis non* could not recover in any form of action
against the administrators of the executor, the balance due from such
executor upon the settlement of his administration account of the es-
tate of the testator.    He says, " I think it well enough settled that
the administrator *de bonis non* could not support the *present action*"
(which was *assumpsit*) " by any principle of the common law.    He
is entitled only to such goods or chattels of the testator as remained
in *specie* in the hands of the executor at the time of his death, or to
such money as belonged to the testator's estate, and had been kept by
the executor *separate and unmixed with his own. In all other cases*
the property was considered as vested in the executor and *could not
be recovered in any form of action* by the administrator *de bonis non.*
That such is the law will appear by the opinion of Chief Justice Holt,
in the case of *Wankford* v. *Wankford*, 1 *Salk.* 306.    And that it was
so taken by Chief Justice Parsons, may be inferred from his opinion
in *Grout* v. *Chamberlin*, 4 *Mass.* 611.    In *Pennsylvania*, however,
where the executor is held to be a trustee for the next of kin, for such

part of the personal estate as is not given away by the testator, there
are strong reasons for supporting an action at law, provided chance-
ry would support a bill filed by the administrator *de bonis non* in
cases where the executor is a trustee for the next of kin.   We direct-
ed the attention of the counsel to this point, but their researches
here produced no instance of a bill in equity being sustained in such
case.   I have no doubt but an action will lie, in our courts, by a
*creditor* or *legatee* of the testator or by the *next of kin* for the undis-
posed surplus of the personal estate.   *There does not seem therefore to
be any necessity for the present action.*"   The counsel for the defend-
ant in this last case, are stated to have cited *Anderson*, 23 *pl.* 49.
*Moor*, 4. *pl.* 13 *S. C.* cited *Ray.* 82. in *Paschal* v. *Warren*, *Cro. Car.*
450 *pl.* 23. 457 *pl.* 3. 457 *pl.* 3.     12 *Car. B. R.*     *Cleve* v. *Veer, S. P.*
in support of the proposition, that " if the administrator of the first
intestate, brings an action for goods of the intestate and recovers, his
administrator shall have execution of the judgment, but when he
has recovered then the administrator of the *first intestate* shall com-
pel him in a court of equity to render so much of the money as he
had recovered, to him, for the use of the first intestate:  I apprehend
there is some mistake in this.   There is no such case as the one re-
ferred to in *Raymond*, and the other cases do not contain any such
principle.   They establish this, that if the first administrator of the
intestate bring an action of debt in *auter droit*, and recover judgment,
but dies before execution, the administrator *de bonis non* cannot have
a revival and execution of the judgment, nor can the personal re-
presentative of the deceased administrator have it.   The judgment
upon the death of the first administrator becomes a nullity.   The
administrator *de bonis non* was entitled to demand and receive the
debt, but if not paid to him voluntarily, he could only enforce it by
bringing a new suit; which was certainly the law until 17 *Car.* 2. *c.*
8. s. 2. changed it in case of a judgment after verdict, and gave the
administrator *de bonis non* a right to sue out a *scire facias* and take
execution upon it.   See 2 *Saund.* 72. *n.* note, and the cases there
cited.   I have not met with a single case to support the proposition
which is said to have been advanced by the counsel for the defendant
in the case of *Allen* v. *Irwin*, nor have I found even a *dictum* to that
effect, unless it can be made out by an inference from one imputed to
Justice HALE in the case of *Drew* v. *Bayly*, 2 *Lev.* 100–1, a case al-
ready cited, where an administrator being possessed of a term for
one hundred years, let for five years reserving a rent, and died.  Upon
suit brought by the executor of the deceased administrator it was ad-
judged that he was entitled to recover the rent, and not the admin-
istrator *de bonis non*.   And HALE said, " the executor of the adminis-
trator shall have this rent, but it shall be assets in his hands liable to
the debts of the intestate, *for which he shall be charged as executor
de son tort.*"   If it were true that he would be chargeable with the
rent when received as executor *de son tort*, it might perhaps be in-
ferred that he would be so at the suit of the administrator *de bonis*

*non,* as well as the creditors of the intestate, because I take it to be a general principle that an executor *de son tort* is liable to the action of the lawful executor or administrator.    *Carth.* 104. 1 *Ld. Raym.* 661. 1 *Com. Dig.* tit. *Administrator,* c. 3. *page* 366, 4th ed. by *Rose. Went. Exr.* 331, *Jeremy's ed.*    It is difficult, however, to conceive how the executor of the administrator could be made to be an executor *de son tort* in receiving rent or moneys which the court decided that he and he alone had a right to receive.    For executor *de son tort, ex vi termini,* means one who acts without authority, *of his own wrong.* " He is such as takes upon him the office of an executor by *intrusion,* not being so constituted by the testator or deceased, nor for want of such constitution substituted by the ordinary to administer."    *Went. Exr. Jeremy's ed.* 320.    The decisions in the Court of Equity in the cases of *Barker* v. *Talcot & Shaw,* 1 *Vern.* 473, and *Butler* v. *Bernard* referred to above, repudiate the idea of the personal representative of the first executor or administrator being made liable to the administrator *de bonis non,* either as executor *de son tort* or otherwise. For it must be observed that the administrator *de bonis non,* and the personal representative of the first executor or administrator were parties in each of those two last cases, and being in a court of equity, where form, or such like objection would be no impediment, the money must be considered as having been decreed to such of the parties before the court as was ultimately entitled to receive it, and as finally settling the question between the representative of the first executor or administrator, and the administrator *de bonis non,* which of them should have it.

Cases have been referred to in order to show that every thing growing out of or arising from the estate of the deceased, as the proceeds of sales made of the goods or of debts collected, and the fruits of suits brought for the conversion of the deceased's property, although prosecuted by the executors or administrators in their own names, are still to be considered assets in the hands of such executors or administrators, and to be accounted for as such after their death by their representatives, if not done by themselves in their lifetime : of this there can be no doubt. In law as well as equity, notwithstanding the *alteration* or *conversion* of the goods by the executor or administrator, since the statute of *Car.* 2. which in effect operates as a will for every person in England dying intestate, by disposing of and designating those who shall have his estate, the executors or administrators are considered trustees managing and administering the estate for the benefit of all concerned, that is, the creditors of the deceased who have the first claim upon the estate, and after paying them, the legatees or those entitled by the statute of distributions to the residue. But an administrator *de bonis non* is not, as I apprehend, to be considered a *cestui que trust* in such case, or as having claim in either law or equity, further than his commission as administrator *de bonis non* gives him a right, which is purely of a legal character, and extends only, as we have seen by the cases and authorities cited, to

(Potts and others *v.* Smith.)

those goods and chattels, rights and credits, which were of the testator or intestate at the time of his decease, and remain *unadministered,* that is, *in specie, unaltered* or *unconverted,* by any act of the first executor or administrator.   It is immaterial to creditors, whether they shall receive payment of their debts from the executor or administrator of the deceased executor or administrator, or of the administrator *de bonis non* ; and it is certainly the duty of the one as much as that of the other promptly and without suit to pay the creditors of the first testator or intestate so far as either shall have assets of that character which are to be paid out by him in that way.   It has been shown that if the executors or administrators die without paying the debts, and after having changed the *specific character* of the goods or debts of their testator or intestate, as by having converted the goods into money, or having collected the debts due and owing to their testator or intestate, or having taking new securities for them payable to themselves, and released or given up the old, that the creditors may sue and recover their debts of the personal representatives of such deceased executors or administrators, to the extent of the funds so converted or changed ; and if a surplus should remain, that it may be recovered by the legatees or next of kin from them in a court of equity, where such exists, and in this state for want of a court of chancery, would be recoverable in courts of law.   Hence there is necessity for placing such funds in the hands of the administrator *de bonis non,* or giving to him a right of action to recover the same.   And although it has been said, and thought by some, that there is great inconvenience attending this course, and that every thing which is considered assets in any point of view, belonging to the estate of the first testator or intestate, and which has come to the hands of the first executor or adminitrator, whether converted or not, and for which he remained accountable at the time of his death, had better, upon that event, go into the hands of the administrator *de bonis non* for final administration ; yet, as it appears to me, there is an objection which might be raised against this.   It would be taxing the estate of the first testator or intestate with the costs of a double if not oftentimes with a still greater charge of administration.   For the first and every subsequent administrator would be entitled to commissions or compensation for selling and receiving the moneys arising therefrom, as also for collecting the debts and paying all out again, although it might only be to the administrator *de bonis non,* that it was paid, and thus it would become liable to deduction for commissions as often as it would pass from one administrator to the hands of a subsequent one on account of the death of the former ; and this operation would have to be repeated as often as an executor or administrator, or administrator *de bonis non,* died without having *fully* administered the whole estate.   It would also in many instances have a tendency to relieve the first executor or administrator, and occasionally the administrator *de bonis non,* from his responsibility, for and on account of sales made by him of the goods on a credit

(Potts and others *v.* Smith.)

when the security taken afterwards failed, or for having taken a new security, payable to himself for debts owing to the estate; because if after such acts of the executor or administrator, he dies, and the collection of these moneys be taken from his representatives, who certainly in justice ought to have the collection of them, if the estate they represent is to be held responsible for them, and to be committed to the care and direction of the administrator *de bonis non,* and it turns out afterwards that the moneys cannot be recovered on account of the insolvency of those who were bound to pay, it may be difficult, if not impracticable often to ascertain through whose default it was that the loss to the estate has been produced; whether it was owing to the insufficiency of the security at the time it was taken, or want of vigilance and attention on the part of the administrator *de bonis non,* in collecting it; and as often as this change is made the difficulty will be increased. Besides it would be taking the completion of an act of administration *commenced,* out of the hands of the representatives of the deceased executor or administrator, who generally being legatees or next of kin, and therefore entitled to a portion, if not the whole of the estate after payment of debts, may well be presumed to feel such an interest in the matter, as to make them use all possible vigilance in looking after every thing, where the slightest neglect, want of attention, or even want of address, might cause a loss to fall upon the estate of such executor or administrator, and putting it under the direction of the administrator *de bonis non,* who may have no interest in saving the estate of the first executor or administrator from loss, further than to avoid the appearance of gross or culpable negligence on his own part.

Such a change would also dispense with what I consider a salutary rule, and one now well established in respect to the payment of costs by an executor or administrator, which is, that wherever he brings an action *in auter droit,* that is, founded upon a transaction which arose in the lifetime of the testator or intestate and fails, he shall not pay costs, but if for a cause to which he himself was a party, although the fruits of the suit if successful would be assets when recovered, yet if he fails he shall pay the costs out of his own pocket. The only authorities against this rule are the cases of *Bull* v. *Palmer,* 2 *Lev.* 165. *b. Mason* v. *Jackson,* 3 *Lev.* 60., and *Cockerill* v. *Kynaston* as reported in 4 *T. Rep.* 281., with the *dictum* of Mr. Justice BULLER in *King* v. *Thom,* 1 *T. Rep.* 489, but it is sustained by the following cases; *Atkey* v. *Heard, Cro. Car.* 219. *Jenkins* v. *Plume & wife,* 1 *Salk.* 207. *S. C.* 6 *Mod.* 91. 181. *Harris* v. *Hanna, Rep. Temp. Hardw.* 204. *Pauler* v. *Delander, Andr.* 357. *Nicolas* v. *Killigrew,* 1 *Ld. Raym.* 436. *Blackway* v. *Betton,* 2 *Shaw,* 342. *Worfield* v. *Worfield, Latch.* 220. *Anon. Ventr.* 109, 110, as also by the reason assigned for it; which is, that not being privy to the original transaction, he cannot be presumed to know exactly what the case may turn out to be upon investigation, and therefore shall not pay costs, but on the other hand where he is a party to it and therefore must be presumed to know all

VOL. III.    48

(Potts and others *v.* Smith.)

about it, he will be held to act upon his own responsibility and not to saddle the estate with the costs of the suit in case of failure. See *Yelv.* 168. *Hayworth* v. *David*, *Cro. Jac.* 229. *Grant* v. *Baily*, 12 *Mod.* 440., and *Jenkins* v. *Plume*, 1 *Salk.* 207, and Justice LAWRENCE in *Cowell* v. *Watts*, 6 *East*, 412. In the case of *Bolard & wife* v. *Spencer*, 7 *T. Rep.* 358, Lord KENYON says, " the rule has, been long settled, that when an executor or administrator brings trover on his own possession, alleging the conversion after the testator or intestate's death, and fails, he must pay the costs." He then further says, " there must be some mistake in the case of *Cockerill* v. *Kynaston.*" See LD. ELLENBOROUGH in *Henshal* v. *Roberts*, 5 *East*. 154. LAWRENCE Justice in *Cowell* v. *Watts*, 6 *East*, 412. It would be unreasonable to adhere to this rule, and to make the estate of the first executor or administrator responsible for costs while his representatives are deprived of all power, control or management of the suit which is given to the administrator *de bonis non* to direct and manage as he pleases.

It is, however, objected in the present case, that the administration bond taken under our intestate law of the 19th of *April*, 1794, is of different import, or at least has been adjudged to have a different effect in *Pennsylvania* from the administration bond given in *England* in pursuance of the statute of distribution of 22 and 23 *Car.* 2. *c.* 10. Our bond, the form of which is given in the act of assembly of 1794, is almost a literal copy of the form prescribed by the statute of 22 and 23 *Car. ch.* 6. 10, and there is therefore no reason in this particular why the effect of such bond with us should be different from what it is in *England.* But it is said that it has been adjudged in *England* that the creditors have no interest in such bond and can claim no benefit from it, whereas it has been determined in *Pennsylvania* that they have. No doubt the law is so in *Pennsylvania.* Indeed, by a supplement to the intestate act of 1794, passed the 4th of *April*, 1797, a mode of proceeding by creditors upon administration bonds against the principals and sureties, is expressly provided for by the second section of the act. And it is also true, that for some-time after the statute of 22 and 23 *Car.* 2. came into operation, it was held by the courts in *England* that the ordinary could not assign the bond to creditors, and that the non-payment of debts, however sufficient the assets might be for that purpose, was no breach of its condition. See *Archbishop of Canterbury* v. *Wills*, 1 *Salk.* 315-16. *Greenside* v. *Benson*, 3 *Atk.* 249-252. *Baker* v. *Demarasque*, 2 *Atk.* 66. *Wallis* v. *Pipon*, *Ambl.* 183, and *Ashley* v. *Bailie*, 2 *Ves.* 370, where Sir *John Strange*, master of the rolls, acknowledges, that it has been so decided, but says that he cannot see upon what ground. However, in the case of the Archbishop of *Canterbury* v. *House*, *Cowp.* 140, decided in 1774, unanimously by the King's Bench, it was held that a creditor had a right *ex debito Justitiæ* as well as the next of kin to sue upon an administration bond in the name of the Archbishop or his ordinary. This I believe has been considered the law ever since in *England*; so that it would appear that we have not only

(Potts and others *v.* Smith.)

borrowed from there the form of our bond, but the effect and construction given to it in that country before our revolution, and at the time of the passage of our act on the same subject. No argument therefore can be drawn from this source in favour of the plaintiff in error, although I think it furnishes one against him; because we have seen from the cases and authorities referred to, that the administrator *de bonis non* can claim nothing under and by virtue of the administration bond since the statute of 22 and 23 *Car.* 2. that he could not have claimed a right to before; and why should it be different here? I confess that I can see no reason.

In the last place the acts of assembly of the 27th of *March*, 1713, 1 *Smith's Laws*, 81, and of the 4th of *April*, 1797, 3 *Smith's Laws*, 296, have been referred to, and relied on, by the counsel for the plaintiff in error; and it has been urged that although this case is not thereby expressly provided for, yet they show how far a preceding executor or administrator, whose letters of administration have been revoked, or who has been dismissed from the administration by an order or decree of the Orphans' Court, may be and is made responsible to his successor for every thing which came to his hands, as executor or administrator; that the present case, if not within the letter of these acts is at least within their spirit, and that the rights of the administrator *de bonis non* ought to be ascertained and regulated by the same principles, as they allege there is the same reason for it in the one case as there is in the other. The second section of the last of these two acts has been dwelt on more particularly; and it has been contended that inasmuch as that section in case of an executor or administrator being dismissed by a decree or order of the court, authorises the court to order him " to deliver over and to pay to the successor all and every the goods, chattels, rights, credits, title deeds, evidences, and securities, which were of the decedent, and which came to his, or their hands, and *remain unadministered,* and to account with the said successor or for all and every the goods, chattels, rights and credits which shall have been *previously administered,* and *pay over* the balance which shall remain due from him or them to the said successor, in such manner and time as the said court shall, upon an examination and confirmation of such account (to be had according to the usual course of proceeding in case of accounts of executors and administrators settled in such courts), award and order," the courts ought, in conformity to the principle therein manifested, to extend the rights of the administrator *de bonis non,* so as to give him every thing which the courts by the provisions of this section are authorized to order a dismissed executor or administrator to pay, deliver over, and account for, to his successor. It is very certain that before the passage of these acts of assembly the administrator *de bonis non* could lay no claim to any part of the estate which had been *administered, altered,* or *converted,* that did not remain *in specie,* by the first executor or administrator. It appears to me that neither of these acts embrace the case of an administrator *de bonis non.* His

(Potts and others *v.* Smith.)

case was provided for, and his rights defined and established by the law as it then stood, but these acts were intended to provide for and apply a remedy to certain cases where none, or at least no adequate one, existed before. These cases intended to be provided for were, when letters of administration had been granted without bond and sureties being given, when sureties had been taken, but were insufficient, or when the executors or administrators of the decedent were wasting or mismanaging the estate. These are the only cases mentioned in these two acts, and I think it is impossible to make it out that the appointment of an administrator *de bonis non*, falls within any of the cases described in these acts. An administrator *de bonis non*, is not appointed because his predecessor had not given bond with sureties, or because, though he had given the bond and sureties, yet they were not sufficient, or because he had wasted or mismanaged the estate, or because his estate and his representatives are not sufficient, and to be trusted with making good the amount of all that was administered or wasted, but because the first executor or administrator is dead, and there is therefore no one in being who by law has any power or right to take charge of that part of the estate which remains *in specie* and *unadministered*. It is obvious that it was impossible to remedy the evil intended to be provided for by these acts without taking every thing belonging or relating to the estate out of the hands of the dismissed executor or administrator. The probability of loss being sustained by or through him if suffered to continue in office was the very reason and ground of dismissing him. This is in no wise applicable to the case of appointing an administrator *de bonis non*, so that he is neither within the letter, reason or spirit of these acts. I however think, notwithstanding, that the second section of the last act has a pretty strong bearing upon the present case, but against the plaintiff in error. I consider it a strong demonstration on the part of the legislature that they considered the law in the case of an administrator *de bonis non*, and what he as such was entitled to, the same as I have laid it down in this case, otherwise if they had believed it to be such as the counsel for the plaintiff have contended for here, it would have been sufficient in so many words to have authorized the Orphans' Court upon the cause therein mentioned for that purpose being shown or proved, to dismiss such executor or administrator, and to *appoint an administrator de bonis non, with all the rights, powers, and privileges of such*. We must infer, however, that they were of opinion that this would not have been sufficient to attain the end in view, and therefore they expressly authorized the court to order the dismissed executor or administrator " to account with his successor for all and every, the goods, chattels, rights, and credits which shall have been *previously administered*, and to pay over the balance," &c. as well as the unadministered goods, &c. Now it is impossible to make sense out of this part of the section which speaks of the goods, &c. previously administered, unless they are understood in the technical sense *de bonis non administratis*, and as

used in the commission granted to the administrator *de bonis non*; for if they were to be understood as meaning goods, chattels, rights and credits, which had been previously and *fully* administered, as it was contended for by the plaintiff in error's counsel, and that all which were not *fully administered* must be accounted for to the administrator *de bonis non*, there could be no such balance from the administration of them in the hands of the dismissed executor or administrator as is there mentioned and directed to be paid over to the successor.

The plaintiff in error was not entitled to maintain his claim in the court below against the defendants, and the judgment of that court is therefore affirmed.

Judgment affirmed.