Howedd, J.
This is a suit on a bill of lumber furnished to defendants, under the style of S. M. Hart & Co., “Agents for the Louisiana Penitentiary.” Plaintiffs allege that the lumber was sold upon the individual credit and responsibility of the defendants, ‘ ‘ who held the proceeds of the labor of said institution,” and used said lumber in removing the machinery and property thereof from Baton Rouge to Clinton, in the fall, of 1862, for supposed safety.
The defendants admit that, as agents of the Louisiana Penitentiary, they received lumber from plaintiffs for said institution; but deny that it was upon their credit and responsibility, and deny that any partnership existed between them, except-as such agents.
Judgment was rendered in favor of defendants, and plaintiffs appealed.
The bill sued on is made out against “Messrs. S. M. Hart & Co., Agents *127 for the Louisiana Penitentiary.” It is admitted they were agents in 1862; that they carried on the Penitentiary, and had the general management of it. It is shown that they purchased cotton and had it manufactured; that they sold manufactured goods and received payment as agents; and that they removed the machinery of the institution to Clinton in the fall of 1862, using the lumber furnished to them by plaintiffs, and giving certificates for hauling, signed “S. M. Hart & Co.” The plaintiffs contend that, under these circumstances defendants cannot successfully invoke the principles of law, which relieve an agent who deals as such with third persons, inasmuch as the Louisiana Penitentiary is not a person or corporation competent to appoint an agent, and as they did not exhibit their, power or authority to represent or act for such an institution as the Penitentiary; and that plaintiffs cannot be presumed to have given credit to the Penitentiary for the means of virtually suspending the operations of the institution.
There is much force in this position, and when we look to the act of 1858, to provide for the administration of the Penitentiary (session acts, p. 222,) we discover that the institution is committed to lessees, who seem to be responsible for the entire expense and management thereof, the State being liable in no event for any sum; and as the defendants did not disclose the names of the lessees, (if acting as their agents) they must be held personally liable.
The true construction of Art. 2981, C. C., quoted by them, if at all applicable to the case, will make them responsible under the circumstances.
It provides that “the mandatary, who has communicated his authority to a person with whom he contracts in that capacity, is not answerable to the latter for anything done beyond it, unless he has entered into a personal guarantee.” Here the defendants did not communicate their authority. We can find nothing in the laws authorizing the appointment of agents for the Louisiana Penitentiary; and as the defendants have not shown how or by whom they were so appointed, we must presume that the partnership of S. M. Hart & Co. had control of and managed the institution under the act of 1858, and that in any event the removal of the machinery to a distant place, not being an act of ordinay administration of the institution, they must be held responsible for the expense thereof incurred in favor of plaintiffs.
It is therefore ordered that the judgment appealed from be reversed, and that plaintiffs, representing the firm of A. Delaroderie & Son, in liquidation, recover of S. M. Hart and Wm. S. Pike, jointly, the sum of five hundred and ninety-nine dollars and fifty-two cents, with five per cent, interest thereon from láth November, 1862, and costs in both courts.
Petition for a Rehearing, by defendants. — In the above cause, in which your Honorable Court have decreed a reversal of the judgment of the lower Court, the defendants and appellees respectfully ask that a rehearing may be granted.
This Court has fallen into an error in concluding that the Louisiana Penitentiary, at the time the bill of lumber was sold to Pike & Hart, agents of the Louisiana Penitentiary, was under the control- of lessees. *128 The lease which had been entered into in March, 1857, for five years, had expired, and the institution was under the control of the -State authorises — that is the Governor and officers appointed by him.
This fact appears from the laws of the State, which the Court, of course, takes judicial notice of. In March, 1857, an act was passed by the General Assembly, under which the Penitentiary was leased for five years, by the election, by joint vote of the Legislature, of lessees for that term, from March, 1857. In 1858 the above act was re-promulgated, in consequence of errors contained in the original promulgation. The act is not passed in 1858, it is simply and merely republished, with its original number and date. See Acts of 1857, p. Ill; Acts 1858, p. 222.
It appears from previous acts of the Legislature, that the State Penitentiary was and is an institution established for the purpose of confining and punishing persons convicted and sentenced in accordance with the laws of the State. That the institution was controlled by the State, and even when leased it was held under the general supervision of the State, through a Board of Control, and a clerk appointed by the Governor.
When the lease for five years ceased, which it did in March, 1862, the Penitentiary necessarily reverted to the exclusive control of the State authorites.
The defendants then were acting as agents for this State institution. Its status and condition being fixed by the laws of the State, must then have been known to plaintiffs at the time of their contracting with defendants as its agents.
It is not pretended that they were not agents: nor can it be contended that they did not disclose who their principal was at the time of contracting, for the account itself sued on, is made out against them as agents of the Louisiana Penitentiary. The authority of the agents is not brought into question.
The general rule as to the liability of agents is succinctly and clearly given in Story on Agency, par. 261. “In general, when a man is known to be acting and contracting merely as the agent of another, who is also known as the principal, his acts and contracts, if he possesses full authority for the purpose, will be deemed the acts and contracts of the principal only, and will involve no personal responsibility on the part of the agent, unless the other circumstances of the case lead to the conclusion that he has either expessly or impliedly incurred, or intended to incur, such personal responsiblity.”
“It is a general rule, standing on strong foundations, and pervading every system of jurisprudence, that where an agent is duly constituted, and names his principal, and contracts in his name, the principal is responsible, and not the agent.” Kent Com., sec. 41, p. 629, 630 (4th edition), This rule has uniformly and repeatedly received the sanction of the Supreme Court of this State. 3 M. R. 642; 4 N. S. 308; 1 L. R. 200; 5 L. R. 334; 10 L. R. 390; 11 L. R. 13; 13 L. R. 21; 3 R. 378; 7 A. 675; 9 A. 520.
Arts. 2981, 2982, Civil Code, have incorporated the above rule as a part of the written law of the State.
Let this case be tested by another general rule, now universally received as the law: “To whom is the credit knowingly given, according to the understanding of both parties?” “He to whom the credit is knowingly and exclusively given is the proper person who incurs liability, whether he be the principal or the agent.” Story on Agency, par. 288
In the case of P. E. Trastour v. B. Fallon et al., 12 A. 25, it was held “that the burden of proof as to terms of contract rested upon the plaintiff, and that to hold the defendants responsible he must show he contracted with them personally, or that they misled him by assuming to act for others without sufficient authority.” The Court in the same case also held that “in cases of this character the controlling question is, whom did the employer trust? If no deception or artifice was used in making the contract, and the employe knew the capacity in which his *129 immediate employer acted, and looked to a special fund, or to a projected company to reward him, he cannot hold the honest agent responsible.” In this case the agents were not held responsible, although their principal was merely a prospective company at the time of the contract.
The decision of Your Honors intimates that additional reason for holding the agents personally liable, is found in the fact that the lumber furnished by defendants was used in moving the machín eryof the Penitentiary from Raton Rouge to a point in the interior, which was not a legitimate and ordinary operation of the institution. It is submitted that nothing adverse to the agents can b,e drawn from this state of the case. They were acting in this matter, as well as in others, simply and merely as agents, and were recognized and contracted with as such by defendants, and consequently their responsibility could in no way bo affected by the use to which articles obtained from defendants were applied, unless it should be shown (and it is not even urged that such is the case) that they had transcended their power as agents in removing the machinery.
That the authorities of the State were not acting in the interest of the State in removing the machinery cannot be presumed by the Court. Even in the absence of testimony the presumptions of law would be in favor of the officers causing its removal.
I am not certain, not having the record before mej .but I think the testimony shows the necessity for the removal, in order to preserve it from destruction. The Court knows judicially that at. the time the machinery was removed, a state of war existed in this country, and that about that time Baton Rouge was permanently occupied by the Federal forces. In anticipation of that occupation, and to protect the machinery from destruction, not by the Federáis, ñor for the purpose to prevent its falling into their hands, but to prevent its destruction by the Confederate forces, who threatened to destroy it in order that it should not fall into the hands of the United States forces, it became necessary to remove it. If this were so, it is clear that the authorities representing the State were evidently acting in the interest of the State in the removal, and their agents certainly did not make themselves personally responsible in carrying out their directions.
It is submitted that, under the law governing agencies between privato individuals, the defendants are not responsible personally.
It is submitted that they were government officers, acting for the public, appointed by the Governor, into whose hands the institution had fallen after the expiration of the lease. As such, the rules as to personal liability of agents would be less stringently applied to them than in their individual capacity. Smith’s Mercantile Law, page 211.