Carrick's Administrator *v.* Carrick's Executor.

---

CARRICK'S ADMINISTRATOR *vs.* CARRICK'S EXECUTOR.

When an executor who has so far administered the personal estate of his testator as to convert it into money, dies, and administration *de bonis non* is granted, the administrator is not entitled to demand of the executor of such deceased executor the part of the estate converted into money; for that, the representative of the deceased executor must account to the legatee or next of kin. He is only entitled to such chattels or choses in action as have not been so converted, and exist as they were at the death of the first testator.

---

Argued on bill, answer, and proofs.

*Mr. H. A. Williams,* for complainant.

*Mr. B. Williamson,* for defendant.

THE CHANCELLOR.

Alexander Carrick, of Paterson, died January 1st, 1831, having made a will dated May 19th, 1817, executed in the presence of two subscribing witnesses, which was admitted to probate by the surrogate of Essex county on the 15th of January, 1831, as a valid will of personal estate. Probate was granted to his brother Robert, one of the executors named in it. He gave all his property to his executors, in trust, during the life of his mother, to receive and pay the income to her, and at her death to pay the principal to his two brothers, Robert and James, and to his two sisters, Bethia and Janet, with a provision that if either should die before a division, his or her share should be payable to his or her heirs, executors, or assigns. James Carrick, the brother of Alexander, died in 1836, leaving children; and the mother of Alexander died in 1839.

Robert Carrick, at the death of Alexander, was in partnership with him, under the name of A. and R. Carrick. Their business was cotton-spinning, and they owned a mill, with a large amout of cotton machinery, at Paterson. After the death of Alexander, Robert continued this business with this mill and machinery. He added largely to the machinery, and improved the building. In 1849, the mill was burned, with the machinery in it. After the fire, on an appraisement made by Robert and the insurers, the remnants of the machinery were valued at $18,356.13, and the building at $6718. What became of these remnants does not appear in the cause.

After the death of his mother, Robert paid about $37,000 of the estate of Alexander to each of his two sisters, but paid no part to the children of his brother James. Robert, of course, was entitled to retain one-fourth for his share.

Robert and Alexander had, in the lifetime of both, received £5000 sterling, the principal of the jointure of their mother, which came to their hands as two of the trustees under a marriage settlement of their father, with a much larger amount of property. After Alexander's death, Robert being

the sole surviving trustee, by virtue of a power in the original settlement by his father, appointed three other persons to act as trustees with him. Two of these are still living.

Robert Carrick died in 1867. His will was proved shortly after his death, and probate granted to William Gledhill and Edward S. Pigot, two of the executors named in it; the widow of Robert Carrick, the other executor, having renounced. William Gledhill died in December, 1869, leaving Pigot the sole executor. In October, 1869, the surrogate granted to Samuel Smith, the complainant, letters of administration *de bonis non* of the estate of Alexander Carrick, deceased, with the will annexed.

This bill is filed by Smith as such administrator, against Pigot as surviving executor of Robert Carrick, for an account of the estate of Alexander Carrick in his hands.

As it nowhere appears in the case that there was in the possession of Robert Carrick, at his death, or that there has at any time since been in the possession of the defendant, any articles of personal estate, or any money or securities for money, *in specie*, or the same articles that Alexander left at his death, and the whole of his personal estate must be assumed to have been converted by Robert, the main, if not the only question in the cause is, whether an administrator *de bonis non* can maintain an action against the executor of the original executor for that part of the estate which he has administered by converting it into money, or whether the legatees or next of kin are entitled and bound to look to the representative of the executor for their share of the assets thus converted and in his hands.

There is no statute in New Jersey affecting this question, as there is in many of the states, and as there is in this state when an executor or administrator is removed for cause.

In England, it seems always to have been considered that an administrator *de bonis non* could only administer such personal property of the deceased as was still remaining *in specie*, in the form in which it existed at the death of the deceased ; and that all that the first executor or administra-

tor had converted into money was administered so far that it did not belong to the administrator *de bonis non*. This question was raised in Pennsylvania, in *Potts, Adm'r de bonis non of May. v. Smith, Ex'r of Smith,* 3 *Rawle* 361. In the opinion of the court, delivered by Justice Kennedy, the decisions in England are fully collected and analyzed, and, as the result, the court held that an administrator *de bonis non* cannot sue the representative of a deceased executor for such part of the estate of the first testator as he had converted into money. This was in accordance with the decision in *Allen* v. *Irwin,* 1 *S. & R.* 549, in the opinion delivered by Chief Justice Tilghman. The courts of England sustain this doctrine in many cases. *Attorney-General* v. *Hooker,* 2 *P. W.* 340; *Wankford* v. *Wankford,* 1 *Salk.* 306; *Barber* v. *Talcot,* 1 *Vern.* 473; *Jenkins* v. *Plum,* 1 *Salk.* 207; *Betts* v. *Mitchell,* 10 *Mod.* 315; and see conflicting authorities in 2 *Williams on Executors* 865, note 1; 2 *Redfield on Wills* 91.

The children of James are entitled, directly, to call upon the defendant, as executor of Robert Carrick, to account to them for their share of the estate of Alexander administered by Robert Carrick, and to a decree for payment of that share, when ascertained.

If the complainant can find any of the personal property of Alexander yet existing, he has a right to take and administer it, and to his action against the defendant or any other person who detains it from him, or who has converted it since April 21st, 1868, the date of the act which prohibits the executor of an executor from administering on the estate of the first testator.

The bill of the complainant must be dismissed.