# Miller and Wife *et al. v.* Womack's Administrator *et al.*

.If an administrator renders a false or fraudulent account, the proper remedy is by a bill to surcharge and falsify the account; and a bill for that purpose must point out and designate the errors, omissions, and false charges complained of.

Where an administrator wasted and appropriated to his own use the estate of his intestate, and died before rendering his final account; held, that his administrators and their sureties were not liable for such mal-administration of their intestate, except so far as property of the estate so mal-administered came into their hands in specie from the hands of their intestate, unadministered.

Where an administrator died, having in his possession assets of his intestate unadministered, which came to the hands of his own administrators in specie; held, that the distributees of the estate to which said assets belonged could not maintain suit for the same, but that such suit must be brought by the administrator *de bonis non* of such estate.

The representatives of an administrator cannot be compelled to account with any person but the administrator *de bonis non*.

Distributees cannot maintain a suit in equity to recover property belonging to the estate of their ancestor without the assent of the personal representative, unless it is averred that such personal representative refused to pursue the matter himself.

In November, 1835, James C. Dickson died, leaving a large estate in stock, farming utensils, and also fifty-six slaves. His only children were Michael J. Dickson, David Dickson, and Martha Ann Dickson, all of whom were minors. On the 23d of February, 1836, Jacob B. Womack obtained letters of administration and guardianship on said estate, and proceeded to administer the same. Shortly after Martha Ann Dickson intermarried with Joseph W. Miller. In the summer of 1836, Jacob B. Womack died intestate, and Martha L. Womack, (his widow,) Abraham Womack, senior, and Abraham Womack, junior, administered on his estate. Joseph W. Miller then obtained letters *de bonis non* on the estate of Dickson. Womack's administrators were subsequently removed, and L. L. Taylor, who had in the time being

intermarried with Jacob B. Womack's widow, received letters *de bonis non* on Womack's estate.

The heirs and distributees of James C. Dickson filed their bill in chancery against the administrators and the administrator *de bonis non*, and their respective sureties, of Jacob B. Womack, charging that the latter, as administrator of Dickson, had wasted all the personal estate of said Dickson, without paying any debts of said estate; and that in one instance he had sold eight slaves of said estate as administrator, and had purchased them himself, for the sum of ten thousand five hundred dollars, and that at the time of his death he had these eight slaves and other property of Dickson's estate in his possession; that these slaves came into the hands of Womack's administrators, who sold them to Abraham Womack, junior, in whose possession they were when this bill was filed. They further charge, that Womack's estate was indebted to Dickson's estate in the sum of twenty-eight thousand three hundred dollars, for which Dickson's administrator held Womack's three promissory notes.

The complainants claimed that they had right either to pursue the eight slaves in the hands of Abraham Womack, or to recover the ten thousand five hundred dollars for which Jacob B. Womack purchased them at his own sale, as they might elect. They also insisted that Womack's administrators were fully apprized of the indebtedness of their intestate to Dickson's estate, and that even if Womack's estate was insolvent, they had a right to a *pro rata* dividend of the same; that said administrators had never settled up the estate of Womack, and that they retained assets in their hands unadministered. The bill prays for an account to be taken, that the court settle the rights of the complainants and the liabilities of the defendants and their sureties, and decree accordingly.

To this bill the defendants filed their demurrer.

QUITMAN and McMURRAN, for defendants, set forth the following special causes.

First. That it does not appear by said bill whether the said complainant Miller sues in his right as distributee, or as *administrator de bonis non* of said James C. Dickson, deceased.

Second. That said complainants are improperly joined in said bill.

Third. That said complainants have made the securities of this defendant and the administrator *de bonis non* of Jacob B. Womack and his securities parties defendants to the bill.

Fourth. That the complainants set forth a title in law to the slaves claimed by their bill.

Fifth. That complainants show by their bill a title if any to said slaves claimed in the said bill in Miller as administrator *de bonis non* of said James C. Dickson, deceased.

Sixth. That it does not appear by said bill whether the complainants seek to charge this defendant in his own right, or as administrator of said Jacob B. Womack.

Seventh. That said bill does not state that any debt due by the estate of said J. B. Womack to the estate of said Jas. C. Dickson was due and unpaid at the time of filing said bill.

Eighth. That said bill alleges that the administration of this defendant and the other administrators of the estate of said J. B. Womack is still unsettled.

Ninth. That it appears by the said bill that the probate court of Hinds county has jurisdiction of the matters therein contained, and not this court.

Tenth. That the remedy of said complainants, if any they have, is at law.

Eleventh. That said bill is otherwise vague, informal, multifarious, &c.


RUCKS and YERGERS, *contra.*


The CHANCELLOR.

The complainants file their bill as distributees of J. C. Dickson's estate, against the defendants as administrators and administrator *de bonis non* of Jacob B. Womack, who was administrator of said J. C. Dickson. The bill charges that J. B. Womack bid off, at his own sale as administrator of Dickson, or otherwise appropriated to his own use, a number of slaves belonging to said estate, including eight which it is alleged he purchased at his own sale as administrator of said Jacob B. Womack; that Womack's

administrator reported his estate in debt, by note to Dickson's estate, in the sum of twenty-eight thousand three hundred dollars. The bill states that the complainants cannot say whether the inventory of Womack's estate is correct, nor whether the list of debts is correct, nor can they state what waste or acts of mal-administration may have been committed by his administrators or administrator *de bonis non,* but do not admit that the inventory or list of debts are correct; that the first administrator of Womack did not fully administer the assets which came to his hands, but retains considerable parts or portions of the same, and so also of the second administrator, and then calls upon the defendants to make discovery of all these things. The bill prays for an account of the estate of Womack, and then for an account generally of all the matters stated in the bill, and for a decree settling the rights of the complainants and defining the liabilities of the defendants and their sureties.

To this bill the defendants have all filed their separate demurrers, and various grounds of demurrer are set out. To apply the causes for demurrer, it is necessary to extract from the bill, as far as may be, the several distinct matters or grounds in regard to which relief is sought, and then to see what relation the defendants severally or collectively bear to the several matters set up in the bill. It will be seen that the complainants sue as distributees of the estate of James C. Dickson, deceased; and that the suit is against the defendants, in their character as administrators of the estate of J. B. Womack, deceased, and against their sureties, founded upon the charge that the intestate of the defendants was the administrator of the complainants' father, through whom they claim; and the grounds taken by the bill for a decree against the defendants are the following:

First. That the defendants' intestate, as administrator of Dickson, wasted and appropriated a large portion of the estate to his own use.

Second. That eight or more of the negroes belonging to the estate of Dickson are in the hands of one of the defendants, Abram Womack, jun.

Third. That the estate of Womack is indebted to the estate of Dickson in the sum of twenty-eight thousand three hundred dol-

lars, which the bill alleges the complainants have a right to charge upon the administrators of Womack and their sureties.

Fourth. That the administrators of Womack have not fully accounted for the estate of their intestate.

The bill prays that they be held to account. Upon this statement of the grounds of the bill, the inquiry at once arises, can the complainants maintain a suit, as distributees, for all or any of these causes? And if so, second, can the defendants be made liable on all or any of these grounds, in the character they are sued on?

The sale and purchase of the eight slaves belonging to the estate of Dickson, by Jacob B. Womack, as administrator, was, I apprehend, such an administration or conversion of them as would prevent the administrator *de bonis non* from maintaining suit for their recovery. I entertain no doubt that the complainants, as distributees of Dickson, would have the right to pursue the slaves in the hands of the defendant, Abram Womack, jr., who bought them at the sale of J. B. Womack's estate, provided it were alleged that he had notice that they were the property of Dickson's estate, and also had notice of the manner of J. B. Womack's purchase; but no such notice is alleged. This right would rest upon the familiar principle, that a purchaser of trust property with notice, actual or constructive, of the trust attached to it, takes it clothed with the trust, and becomes *ipso facto* trustee. 1 Yerger, 296. But the complainant's right to pursue these slaves in the hands of Abram Womack has no conceivable connection with his late character as administrator of J. B. Womack.

So far as the conjectured inaccuracy of the inventory and list of indebtedness and accounts of the estate of Womack by the administrators is concerned, it is clear that there is no foundation for sustaining this bill, even if the proper parties were before the court. These matters could only be reached by a bill to *surcharge* and *falsify* the accounts, and it is well settled that a bill for that purpose must point out and designate the errors, omissions, and false charges complained of; and where an account is gone into under such a bill, the complainants are limited to such matters as they have specifically alleged to be over charges, errors and omissions. Phillips *v.* Baldwin, 4 Cranch, 306; 1 ed. Ch. 1.

Womack's administrators and their sureties have nothing to do with the estate of Dickson, and cannot be proceeded against except so far as property belonging to Dickson's estate, came into their hands in specie from the hands of their intestate unadministered. Their liability would then arise from the fact of their having the property in their hands, and not from their character as administrators of Womack. Barber *v.* Robertson, 1 Littell, 96. But in such case the suit would have to be brought by the administrator *de bonis non* of Dickson, as such property would be assets in his hands. Such suit cannot be maintained by the complainants as distributees. In the case of Emerson *v.* Staton, 1 Monroe, Rep. 118, it was held, that distributees could not maintain a suit in equity for the recovery of debts belonging to the estate of their ancestor without the assent of the personal representative, unless it was averred that such representative refused to pursue the matter himself. In the case of Cannon *v.* Jenkins, 1 Dev. Eq. Rep. 422, it was distinctly held, that the representatives of an administrator could not be compelled to account with any person but the administrator *de bonis non*. This case is strikingly analogous to the present, and is a strong authority for the defendants. But it seems to me demonstrably clear that in such a suit, even if brought by Dickson's administrator *de bonis non,* the sureties of Womack's administrators could not be joined. They became bound that the administrators would faithfully administer the property and effects belonging to Womack, deceased, not that they would account for the property of any third person that might get into their hands; nor have the sureties of Womack's administrators any thing to do with the devastavit alleged to have been committed by Womack, as the administrator of Dickson's estate. This might be matter of accountability against Womack's sureties, but certainly not against the sureties of Womack's administrators. But it is alleged that Womack's estate is in debt to Dickson's estate by note in the sum of twenty-eight thousand dollars. This surely furnishes no foundation for the maintenance of a suit in the name of Dickson's distributees. Dickson's administrator *de bonis non* is the creditor representing this claim, and has his ready remedy at law, or if necessary may in his character of creditor file his bill in this court against Womack's administrator for a discovery of assets and the

payment of the debt. This seems in part to have been the purpose of this bill. But such a bill cannot be maintained by the complainants in their character of distributees. There is no privity between them and the debtors of the estate. I know of no rule that authorises distributees of an estate, either at law or in equity, to recover the debts due the estate; such an office belongs peculiarly and exclusively to the administrator, if there be one, except under a very special state of things, not pretended to exist in this case. Mit. Pl. Am. Ed. 215, top page; 1 McCord, Ch. R. 325; 5 Munf. 418.

In relation to the joinder of the former with the present administrator of Womack, I see no objection. If the complainants had shown a right to sue them, such a joinder seems to be proper. See Holland *v.* Pryor, 1 Mylne & Keene, 237; Con. Eng. Ch. R. It is estimated although not expressly alleged in the bill, that the estate of Womack has been reported insolvent. If this fact had distinctly appeared, it would of itself have constituted an insuperable objection to the suit. Our statute expressly prohibits a suit from being maintained against administrators after a declaration of insolvency. A suit under such circumstances could only be maintained, I apprehend, if at all, upon a bill expressly charging fraud in procuring such declaration of insolvency.

The several demurrers must be sustained, and the bill dismissed without prejudice.

From this decision an appeal was taken to the High Court of Errors and Appeals, which remains undecided.