By the Court.—Rosekrans, J.
The case made by the complaint, which is demurred to, as not stating facts sufficient to constitute a cause of action, is, in substance, this : Jonathan Walton, deceased, made his will, by which he gave the use of his mansion house, and the use and income of one-third of the rest of his real and personal estate, to his wife, for life ; and all the rest, residue and remainder of his real and personal estate, including that part given t.o his wife, after her death, to his three sons and two daughters. Subsequently, the'testator made a codicil, by which he revoked the provision in favor of his son Nelson, and gave his son Nelson’s part to Asa Sprague, in trust for Nelson, and after his death, to his children. He made another codicil, by which he revoked the provision to his son Edward and daughter Eliza, and gave them the annual incpme of their shares, and after their death, the principal to their children. Another codicil was -made, providing for deductions from each son and daughter, of. advances made by the testator to each of them. The testator appointed his wife executrix, and his son, William B. Walton, executor, of his will,- and they took upon themselves the execution of it; that the widow died in 1843, leaving assets to Jonathan Walton, deceased, unadministered, and that after her death, all the goods, chattels'and credits of the testator came to the hands of William B. Walton, and that he died in 1851, leaving a large portion of the estate of Jonathan Walton unadministered; that letters of administration were granted to the plaintiff, of the goods, chattels and credits of Jonathan Walton, deceased, *431 which were left unadministered by William B. Walton, surviving executor of Jonathan Walton, deceased, and that plaintiff qualified as such administrator de bonis non; that William B. Walton made his will, appointing defendant bis executrix, who proved the will and accepted the executorship of it; that William B. Walton had in his possession, as such executor, for administration, a large amount of assets, the property of the estate of Jonathan Walton, deceased. These assets are set forth, in a schedule annexed, as lands, mortgages, notes and other demands, held by Jonathan Walton at his death, upon which William B.'Walton had collected the full sums due; and the said assets and property, and the proceeds and income thereof, it is alleged, remained in William B. Walton’s hands, as such executor, unaccounted for, at the time of his death. It is averred that defendant refuses to account unto the plaintiff for the unadministered assets of the estate of Jonathan Walton, deceased, so remaining unadministered. The complaint prays that an account may be taken of said unadministered assets which remained in William B. Walton’s hands, and also of such assets as may be in the possession or under the control of .the defendant, and of the proceeds of any which have come to her possession, and that the defendant may be directed to deliver over and transfer said assets and proceeds thereof, to the plaintiff.
It must be borne in mind, that there is no allegation in the complaint that any of these assets, or the proceeds thereof, have ever come into the defendant’s possession or are under her control, in any capacity, and that there is no allegation that. William B. Walton ever wasted, or converted to his own use, any of the assets of the estate of Jonathan Walton, deceased, or the proceeds thereof, or moneys collected thereon. No liability, therefore, of William B. Walton, for having committed devastavit of the estate of Jonathan Walton, deceased, is set forth, for which the defendant, as the executrix of his* will, would be liable under the statute cited by plaintiff’s counsel in his first point (3 Rev. Stat., 5th ed., 202, § 6). This statute is but a re-enactment of the English statute (30 Car. II, st. 1, ch. 7, and of 4 and 5 William & Mary, ch. 24, § 12). It was embodied in our earliest statutes (K. & R. Ed., vol. 1, 537, § 7; 1 R. Laws, 312, § 8), and was intended to provide a *432 remedy at law for a personal tort, committed by an executor who died, and which, at common law, was held to die with the person (2 Williams on Exec., 147). It has no application to a case like that stated in the complaint, of assets of an estate remaining unadministered in the hands of an executor at his death, or money collected by an executor and retained in his hands at his death, unaccounted for, when there has been no breach of trust. Neither is the ease made by the complaint within the act of 1858 (Laws of 1858, ch. 314, § 1), which provides that any executor or adminstrator may, in behalf of any person interested in the estate, treat as void and resist all acts done, transfers and agreements made in fraud of the rights of themselves and others, interested in any estate or property held by, or of right belonging to, any such trustee or estate.
The .complaint does not'state that William B. Walton did any act or made any transfers or agreements in fraud of the rights of any one interested in the estate of Jonathan Walton, deceased. He is alleged to have received certain assets of the estate of Jonathan Walton, deceased, and to have collected the .money on them, and to have had these assets or their proceeds in his hands, unaccounted for at his death. Nobody was defrauded by these acts. They were all lawful, and besides, there is no averment that they were illegal. It is the duty of an executor to collect the debts due to his testator, and the complaint in this case does not allege that William B. Walton either spent or consumed or converted to his own use a portion of the money which he collected. On the contrary, it is distinctly averred that he had the entire assets, recovered by him on their proceeds, in his hands at the time of liis death, unadministered and unaccounted for. The sole question presented by the demurrer to the complaint, is this : Gan an administrator, de bonis non, of a testator, appointed after the death of the sole executor of his will, maintain an action against the executor of the deceased executor’s will for an account of moneys collected by the first executor, on demands due to his testator, which were in the hands of said first executor unaccounted for «at the time of his death, but which moneys are not alleged to be distinguishable from the moneys of the executor who collected them? At common law, if an executor collected a demand due to his testator, the demand'was said to be administered (Grant v. Cham *433 berlain, 4 Mass., 612). In Williams on Executors, vol. 1, 781, it is said an administrator debonis non is entitled to all the goods and personal estate, such as terms for years, household goods, &c., which remain in specie, and were not administered by the first executor or administrator. If an executor receive money in right of his testator and lays it up by itself and dies intestate, this money shall go to the administrator de bonis non, being as easily distinguished to be a part of the testator’s effects as goods in specie. But if by some of the means specified in an .-earlier part of this work, the property or any of the effects of the deceased has been changed by the original executor or administrator, and is vested in him in his individual capacity, such effects will go to his own administrator or executor, and not to the administrator de bonis non. In the former part of the work referred to, it is held that even if ready money be left by a testator and come to the hands of his executor, the property in the specific coin must, of necessity, be altered, for when it is intermixed with the executor’s own money, it is incapable of being distinguished from it, although he shall be accountable for its value. The form of a grant of letters of administration de bonis non, formerly recited the former grant, and that the first administrator intermeddled with the goods, chattels and the credits of the deceased, and died,. leaving some part thereof (that is, of those goods, chattels, and credits) unadministered and not fully disposed of, it then granted power to the new administrator to administer and faithfully dispose of the goods, chattels and credits of, &c., unadministered. This form of grant would seem to imply that if goods, chattels or credits of the testator or intestate were disposed of, they were hot unadministered. In the courts of many of the United States, it has been held that an administrator de bonis non is only entitled to such goods, chattels and effects of the decedent as are not disposed of or converted into money by the former executor or administrator, unless such money is shown to have been kept separate and distinct from, and not mingled with the individual money of the former executor or administrator. Among other authorities, the following may be cited as holding this doctrine:
In Kentucky, Slaughter v. Froman, 5 Mon., 19; Carroll v. Connet, 2 J. J. Marsh., 195; Graves v. Downey, 3 Mon., 353; *434 Lawrence v. Lawrence, 6 Litt., 123. In Virginia, Coleman v. McMurdo, 5 Rand., 51. In Alabama, Chamberlain v. Bates, 11 Ala., 550; Swink v. Snodgrass, 17 Id. N. S., 653; Nolly v. Wilkins, 11 Id., 872. In Mississippi, Byrd v. Holloway, 6 Smedes & M., 323; Prosser v. Kirby, 1 How. Miss., 87; Stubblefield v. McRaven, 5 Smedes & M., 130. In South Carolina, Smith v. Carrere, 1 Rich. Eq., 123, in which this court says, “ This is founded on the nature of his commission, which gives him title only to the goods which remain unadministered.” In Georgia, Thomas v. Hardwick, 1 Kelly, 78; Paschal v. Davis, 3 Kelly, 256, it was held to be the rule of the common law that an administrator de bonis non was entitled only to the goods which remain in specie, and to debts due the decedent which remain unpaid, in Oglesby v. Gilmore, 5 Geo., 56; Hardwick v. Thomas, 10 Id., 266; Gilbert v. Hardwick, 11 Id., 599,
In Pennsylvania, it was held that an administrator de bonis non, could only claim the goods of the testator remaining in specie; that the collection of the testator’s debts, or a sale of his goods by the executor, is an administration of them, and precludes the administrator de bonis non from claiming any right to them or their proceeds—that they are not embraced in this commission, which is for the administration of the goods, and which were of the testator remaining unadministered (Potts v. Smith, 3 Rawle, 361). In Indiana, it is held that an administrator de bonis non could not maintain an action against the first administrator for a devastavit; that the action would only lie in favor of the creditors and distributors of the intestate (Young v. Kimball, 8 Blackf., 167). In Illinois, it was held that an administrator de bonis non cannot compel,the personal representatives of a deceased administrator to account for assets already administered upon, and that the creditors and distributees of the first intestate alone could maintain the action (Marsh v. People, 15 Ill., 285; Rowan v. Kirkpatrick, 14 Id., 1; Newkall v. Turney, 14 Id., 338).
These authorities are sufficiently numerous and respectable to relieve the doctrine which they establish from the charge of absurdity, and where it is known that a single action in favor of all the creditors, legatees, or distributors of the person whom the administrator de bonis non represents, or in favor of only *435 one of these prosecuting for himself, and all others who should choose to come in and be made parties to the action, would accomplish the same object which an action by the administrator de bonis non would bring about, if he could maintain the action, there would seem to be no very good reason for conferí ng the right of action upon the, latter. I shall assume that the common law rule was as it is stated to be by die cases cited, and proceed to examine our statute for the purpose of ascertaining whether it has been changed in this State. The statute already cited, 3 Rev. Stat., 5th ed., § 6, which provides that the executors and administrators of every person who, as executor, either of right or in his own wrong, or. as administrator, shall have wasted, or converted to his own use, any goods, chattels or estate of any deceased person, shall be chargeable in the same manner as their testator or intestate would have been, if living.” It confers no right of action upon the testator de bonis non of the deceased owner of the goods. The first executor or administrator was chargeable when living only by the creditors, legatees or distributees of the deceased owner, and as the executor or administrator of the first executor or administrator is only chargeable for a devastavit by him, in the same manner as his testator or intestate would have been if living, the inference is irresistible that the administrator de bonis non cannot maintain an action for such devastavit.
Our statute provides that no executor of an executor shall, as such, be authorized to administer on the. estate of the first testator, but that on the death of the sole surviving executor of • any last will, letters of administration with the will annexed, of the assets of the first testator left unadministered, shall be issued in the manner.and with the authority as afterwards provided (3 Rev. Stat., 5th ed., 156, §§ 17 and 11). 3 Rev. Stat., 5th ed., 747, provides that an executor of an executor shall have have no authority to commence or maintain any áction or proceeding relating to the estate, effects or rights of the testator of the first executor, orto take any charge or. control theréof, as such executor. And section 45, 3 Rev. Stat., 5th ed., 162, provides that if all the executors or administrators to whom letters testamentary or of administration shall have been granted, shall die or become incapable of executing the trust reposed in them, or the power and authority of all of. them, *436 shall be revoked by the surrogate having authority, he sii all issue letters of administration upon the goods, chattels, credits and effects of the deceased left unadministered, with the will annexed or otherwise, in the same manner as in the statute is directed in regard to the original letters of administration, and that the administrator so appointed shall give bonds in the like penalty, with like sureties and conditions as before are required of administrators, and shall have the.like power and authority. How it will readily be perceived that these statutes confer no authority whatever in support of the doctrine contended for by plaintiff. The defendant in this case claims no right to administer upon the estate of Jonathan Walton deceased, or to take any charge or control over the estate, effects or rights of Jonathan Walton, deceased. The money collected by William B. Walton, as executor" upon the debts due to his testator, unless it was kept separate and distinct from his own money, so as to be distinguished from it, became the property of William B. Walton, and he thereby and from thence was chargeable with it value (2 Williams on Exrs., 542). If it was in his hands at his death, it was assets of his own estate, and passed to the defendant as his executrix (2 Rev. Stat. [5th ed.], 169, § 6, subd. 8). If an executor changes the form of the testator’s estate, the general rule is that this is a conversion, and as money has no ear marks, it cannot be followed. But the executor by such transaction has made himself liable to a devastavit, for which the party injured must seek satisfaction out of the executor’s ‘own effects- (2 Williams on, Exrs., 1665). The commission of the administrator de bonis non, under the statute cited, is .precisely such as was always granted to such an administrator, The power and authority conferred upon Mm by the statute. wMch the statute declares shall be like that of the first executor or administrator, extends to such goods, chattels and effects as have not been administered, and to such only. The case of Goodyear v. Bloodgood (1 Barb. Ch,, 617), holds that the administrator de bonis non has no interest in moneys collected by a former executor of the decedent, and wMch are in the hands of such executor at the time of his death unaccounted for. I think the demurrer is well taken, and that the order of special term should be affirmed
From the decision thus made, the plaintiff appealed to the .court of appeals.
T. B. Mitchell, for the appellants :
Two questions are involved in this case :—1. As to the liability of the defendant in her representative capacity. 2. As to the extent of the powers of the plaintiff as administrator de bonis non. We claim, in the first place, lliat both of these questions are settled in favor of .the plaintiff by the statutes of this state, without reference to the common law, or statutes or laws of other states and countries.
I. The defendant Sarah P. Walton, is liable, as executrix of-William B. Walton, to account to the proper party for “ any goods, chattels or estate” which belonged to Jonathan Walton at his death, and which may have been wasted or converted or retained by her testator, William B. Walton, deceased, and an action for that purpose may be brought in the supreme court (3 Rev. Stat., 5th ed., p. 202, § 6; Willard’s Eq. Jarisp., 560; 2 Hill, 180 Id., 225 ; 13 Wend., 591; 3 Ed. Ch., 203; 20 How. Pr., 354).
II. Assuming that William B. Walton converted the estate of his testator, and mingled the proceeds with his own estate, we insist that the plaintiff as administrator de bonis non, is invested with the title to such proceeds and the right "to maintain this action for an account (3 Rev. Stat., [5th ed.], 156, § 17; Id., p. 162, §§ 45, 44; Id., p. 747, §§ 11, 13, 17,18).
III. If we look béyond the statutes of this State, which we submit, make the right of the plaintiff to. maintain this action quite manifest, into the authorities of other states, we shall find the views of the plaintiff generally sustained. The authorities are various and conflicting, differing according to the different local laws and statutes of the respective states where the questions have arisen, but the general current of authority sustains the right of the plaintiff to maintain this action in his representative capacity (2 Brock [ Va.], 159, 164; 5 Rand. 51; 5 Harring [Del.], 182).
S. W. Jackson, for the respondents.
I. If the property which is the subject of this action, is,' as it is claimed by the plaintiff to be, assets which were left unadministrated' by William B. Walton as executor as aforesaid, the facts stated in the com *438 plaint, do not constitute a cause of action against the defendant as executrix in favor of any person, (a.) They do not create or show a right to demand or have of the defendant an account of such assets. 2 Rev. Stat., 113, § 2, provides that “ actions of account, and other actions on contract, may be maintained by and against executors, in all cases in which the same might have been maintained by or against their respective testators.” This furnishes no authority for the maintenance of an action, on account of anything done or omitted by a testator in any cases other than those in which the action might have been maintained by and against such testator. The main fact alleged is, that the defendant’s testator as executor of Jonathan Walton had in his possession at the time of his death, a large amount of assets of such estate and their proceeds unaccounted for. This would not have constituted a cause of action against William B. Walton in his life time. He had a right to the possession of such assets by virtue of his executorship. He had moreover . a right, and it was his duty to convert the assets into money, and to receive the proceeds and income thereof. Ho misfeasance or malfeasance is imputed to him. An action against an executor for an account of his proceedings, as such executor, can only b.e maintained by one who has a legal demand against the estate as creditor, legatee, or in some other capacity, by reason whereof he has a claim upon the assets in the hands of the executor. Ho person is shown to have any such demand. But the action is not brought for an account of the proceedings of W illiam B. Walton as executor. The presumption, in the absence of all allegations to the contrary is, that he has faithfully administered to the extent of the assets administered upon. The complaint, in reference to this, simply alleges that at the time of William B. Walton’s death, a large amount of assets remained hi his hands, as such executor, unaccounted for, and claims that the plaintiff is entitled to have an account rendered by the defendant as his executrix of the assets so remaining unadministered. And this too, without alleging that any part of such assets ever came to the defendant’s possession. In other words, it claims that the defendant, as executrix of William B. Walton, is liable to an action to compel her to make a statement of the assets of Jonathan Walton’s estate, upon which her testator did not administer, and of which it is to be presumed that *439 the plaintiff duly obtained possession, and that, too, without showing how such a statement may be useful or necessary. The presumption that the plaintiff has duly obtained possession of all the assets left unadministered by William B. Walton, arises from the want of any allegation to the contrary. He is entitled to such possession, and the law presumes, in the absence of all proof to the contrary, that every one is in the undisturbed enjoyment of his rights. ("b.) The facts stated in the complaint do not show the defendant to be liable for a conversion of any unadministered assets of the estate of Jonathan Walton. 1. She cannot be made liable in her representative character for the conversion of such, assets. A conversion by her would be a conversion in her individual character and not as executrix. Such assets are no part of the estate which she represents, and she cannot by intermeddling with the property of other persons render such estate liable therefor. 2. But it is not alleged that she ever had possession of any such assets. 3. There is no allegation of any waste, or conversion to his own use, of any such assets, by William B. Walton, the defendant's testator.
H. The facts stated in the complaint do not consitute a cause of action in behalf of the plaintiff, (a.) By .the common law, an administrator de bonis non can not maintain an action against the executrix of a deceased executor, to recover moneys received by such former executor, on the sale or collection of assets belonging to the estate of his testator, nor to have an account of his proceedings as such executor. The right to such action and account is restricted to the creditors and legatees of the original testator. “ An administrator de bonis non, is entitled to all goods and personal estate, such as household" goods, &c., which remain in specie, and were not administered by the first executor or administrator. And if A. dies intestate, and his son takes out administration to him and receives part of a debt being rent in arrear to the intestate, and accepts a promissory note for the residue, and then dies intestate, this acceptance of the note is such an alteration of the property as vests it in the son, and therefore, on his death it shall go to his administrator, and not to the administrator de bonis non” (3 Bacon Abr., 20). “ If the goods of the testator remain in specie, they shall go to his administrator de bonis non, because in that case it is notorious which were the goods of the testator, and they are distin *440 guishable” (Salkeld, 306). “ An administrator de bonis non is entitled to all the goods and personal estate which remain in specie and were not administered by the first executor. If an executor receives money in right of his testator, and lays it up by itself, and dies, this money shall go to the administrator de bonis non, being as easily distinguished to' be a part of the testator’s effects as goods in specie. But if the property or any of the effects of the deceased has been changed by the original executor and is vested in him in his individual capacity, such effects will go to his own executor or administrator, and not to the administrator de bonis non” (1 Williams on Exec., 781). And the following cases, selected from the reports of the different States, show a recognition of our leading proposition as an established principle of the common law.
New York: Conklin v. Egerton, 21 Wend., 430; Gilchrist v. Rea, 9 Paige, 66; Trustees, &c. v. Kellogg, 16 N. Y., 83, 90; Dakin v. Demming, 6 Paige, 95.
Maryland: Neale v. Hagthorp, 7 Gill. & J., 13; S. C., 3 Bland, 551; Hagthorp v. Hook, 1 Gill, & J., 270.
Yirginia: In Coleman v. McMurdo, 5 Band. 51; a case decided in the court of appeals of Yirginia, in 1827, after a full review of all the authorities on this question, the court says: “ This review shows us that in all contests for the property of the intestate, between the administrator de bonis non and the representatives of the first administrator, a conversion has uniformly been held to withdraw the property from the administrator de bonis non, and the statute making the administrator of the first executor, or administrator, suable for the devastavit of the first, does not give the power to the administrator de boiiis non, but gives it to the creditors and distributees. “ To meet this formidable array, what is there on the other side ? not one single case, not the dictum of a single judge; not the assertion of an elementary writer that an administrator de bonis non can support an action, or file a bill for an account against the representatives of a delinquent executor or administraior. This absence of authority alone, is conclusive evidence that in England such a right was never claimed.” In this case, and also in Morris v. Morris, 4 Grat., 293, and Cheatam v. Burfoot, 9 Leigh., 580, it was decided that an administrator de bonis non could not maintain an action against the representa *441 tives of the first administrator for a settlement of his accounts (see Dykes v. Woodhouse, 3 Rand., 287).
Kentucky: A bond executed to an administrator as such, for assets sold by him, is not an asset in the hands of an administrator de bonis non ; not being an effect left in specie by the testator (7 J. J. Marsh, 128). An administrator de bonis non, can not maintain an action on the administration bond of a former administrator against his sureties and representatives (Bradshaw v. Commonwealth, 3 J. J. Marsh., 632). Neither can lie maintain an action against a prior administrator for the recovery of assets converted by him (Oldham v. Collins, 4 J. J. Marsh., 49; Felts v. Brown, 7 J. J. Marsh., 147). An administrator de bonis non, is entitled to the chattels of the decedent, not disposed of or converted into money by the first administrator; but not to the price of articles sold, unless it be shown to have been kept separate and distinct, and not mingled with the individual moneys of the administrator (Slaughter v. Froman, 5 Monroe, 19; Carrol v. Connet, 2 J. J. Marsh., 195; Graves v. Downey, 3 Monroe, 353; Lawrence v. Lawrence, 6 Litt., 123).
Alabama : An administrator de bonis non can not maintain an action against the representatives óf a former administrator to recover money received by him in the course of his partial administration, and not accounted for nor paid over. His authority embraces only such personal property as has not been converted into money (Abney v. Pickett, 21 Ala. N. S., 739; Chamberlain v. Bates, 11 Ala. [2 Porter], 550; Swink v. Snodgrass, 17 Ala. N. S., 653; Nolly v. Wilkins, 11 Id., 872; see Harbin v. Levi, 6 Id., 399; see Caller v. Boykin, Minor, 206). A settlement of the former administrator’s accounts can only be had between his representatives and the distributees or legatees (Case last cited).
Mississippi: An administrator de bonis non can maintain an action, only for the assets which remain un ad ministered by the former administrator. If, upon settlement of his accounts as administrator, a balance is found due the estate,-the creditors and distributees must sue for it; the administrator de bonis non can not (Searles v. Scott, 14 S. & M., 94; Prestidge v. Pendleton, 24 Miss., 80; Byrd v. Holloway, 6 S. & M., 323; Prosser v. Yerby, 1 How. Miss., 87; Stubblefield v. McRaven, 5 S. & *442 M., 130; Kelsey v. Smith, 1 How. (Miss.), 68; Gamble v. Hamilton, 7 Miss., 469; Miller v. Womack, 1 Freem. Ch., 486). Money collected by an attorney, on a demand given him by an administrator for collection, is not assets of the estate "which an administrator de bonis non can claim. It must go into the accounts of the prior administrator (Sloan v. Johnson, 14 S. & M., 47).
South Carolina: In Smith v. Carrere, 1 Rich. Eq., 123, a case decided in the court of chancery in South Carolina, it was held that an administrator de bonis non can only recover from the personal representatives of a deceased administrator stich personal estate of his intestate as remains in specie, and has no right to call them to an account for any part of the estate wasted or converted by the deceased administrator. The court says: “ This is founded on the nature of his commission, which gives him title only to the goods which remain unadministered. Before the statute of distribution, an execm tor was entitled to the whole personal estate, subject only to the payments of debts and legacies. When therefore, he sold or converted any part of it, the goods so sold or converted were administered and no longer in his possession as executor” But held in Yillard y. Robert, 1 Strobh.' Eg., 393 ; that the a. d. n. could compel the representatives of deceased executor to account in.equity for proceeds converted into money (See Miller v. Alexander, 1 Hill Ch., 25; Thompson v. Buckner, Riley Ch., 33). Contra in N. C. (Quince v. Quince, 1 Murph., 160; Satterwhite v. Carson, 3 Iredell Law, 549).
Georgia: An administrator de bonis non is entitled to receive from his predecessor or his representatives only such •goods, chattels and cz'edits belonging to the estate of his (estator, as remain in specie. He can not maintain a suit for waste or conversion of assets by his predecessor.—Such suit or a suit for a settlement of the administration accounts can only be maintained by cz-editors, legatees and distributees (Horskins v. Williamson, T. U. P. Charlt., 145; Thomas v. Hardwick, 1 Kelly, 78; Paschal v. Davis, 3 Kelly, 256). Distributees may also sue (Shorter v. Hargroves, 11 Geo., 658; Knight v. Lasseter, 16 Geo., 151; Arline v. Miller, 22 Id., 330). At common law, an administrator de bonis non is entitled only to the goods which remain in specie and to the debts due the intestate which remain unpaid, but under the Act of 1845, he *443 may call his predecessor or his representatives to account, touching the entire administration of the estate, and they are liable to him, as at common law they were liable to creditors and distributees (Oglesby v. Gilmore, 5 Geo., 56; Hardwick v. Thomas, 10 Geo., 266; Gilbert v. Hardwick, 11 Geo.,. 599).
Indiana: An administrator de bonis non sued administrator of first administrator for a devastavit;—Held, that the suit would not lie—that the action should have been brought by creditors, &c., of the intestate (Young v. Kimball, 8 Blackf., 167; but see State v. Porter, 9 Ind., 342). .
Illinois : An administrator de bonis non can not compel the personal representatives of a deceased administrator to account for assets already administered upon ; creditors and distributees alone can maintain .the action (Marsh v. People, 15 Ill., 285; Rowan v. Kirkpatrick, 14 Ill., 1; Newhall v. Turney, .14 Ill., 338).
Pennsylvania: An administrator de bonis non can claim only the goods of the testator remaining in specie (see Weld v. McClure, 9 Watts, 495); the collection of the testator’s debts, or a sale of his goods by the executor, is an administration of them, and precludes the administrator de bonis non from claim-ing any right to them or their proceeds changed by statute. (Little v Walton, 23 Penn., 164). They are not embraced in his commission which is for the administration of the goods &c., which were of the testator and remaining unadministered (Potts v. Smith, 3 Rawle, 361).
Connecticut: Alsop v. Mather, 8 Conn., 584.
Massachusetts : If a judgment recovered by an administrator upon a debt due the estate, is satisfied, then the debt is an administered asset (Grout v. Chamberlin, 4 Mass., 613). This case was decided in 1808. Since then, it is provided by Revised Statutes of Mass., ch 70, § 11, that all monies collected of an administrator, his representatives or sureties, for a devastavit shall be assets to be administered by administrator de bonis non. In some of the states, acts have been passed by their legislatures, giving to administrators de bonis non the power and authority claimed by the plaintiff in this action. But before or without such a legislative enactment, only a single case cair be found in any of the States, in any degree opposed to om *444 proposition; and we maintain it to be the law wherever the common law prevails, unaffected by statutory laws. The excepted case referred to (Hill v. Alexander, cited by the plaintiff ’s counsel), stands entirely unsupported, and it is difficult to conceive upon what theory or principle the decision is based. Besides the principle of the case was overruled by the same court ten years afterwards, in the case of Smith v. Carrere, above cited". Opposed as it is by the array of authorities which have been cited, and disregarded by the very court which decided it, it cannot he regarded as of any weight.
(b.) The principle of the common law which restricts the authority of administrators de bonis non, to the goods and chattels of tiie testator which remain in specie, is unaffected by the statute law of the State, except as hereinafter stated. The constitution of the State provides, that such parts of the common law which were in force in 1777, and winch have not been repealed or altered by legislative enactments, shall be, and continue the law of the State, subject to such alterations as the legislature shall make. Several acts, have been passed by the legislature of the State, conferring new powers and imposing new duties upon administrators de bonis non. It will be found that they are now permitted to take out executions, have writs of seirefacias, and writs of error upon judgments obtained by their predecessors (1 Rev. L., 312, § 9; 2 Rev. Stat., 439, § 13. 18). They are also authorized "to cite a former administrator or executor whose authority has been revoked or superceded, to account before the surrogate, in the same manner as is provided for a creditor (2 Rev. Stat., 95, § 74). These are powers which they did not possess under the common law (Grant v. Chamberlin, 4 Mass., 613; Dale v. Roosevelt, 8 Cow., 344). But -the plaintiff’s counsel insists, that by our statutes they are also invested with a title to the proceeds of property which belonged to the estate which was converted by a deceased executor; and with a right to maintain an .action against the representatives of such executor for an account. The authority and power conferred by our statutes upon administrators de bonis non. so far as it relates to property, is confined to the goods, chattels, credits and effects of the deceased left unadministered (2 Rev. Stat., 71 § 17; 78, § 45). 2 Rev. Stat., 78, § 45, provides, that in case of the death of all the executors to whom letters testamentary *445 have been issued, “ the surrogate having power to grant letters originally, shall issue letters of administration upon the goods, chattels, credits and effects of the deceased, left unadministered.” There is therefore no power or right conferred by statute, over, or concerning any property except assets left unadministered by the former executor or administrator.- These and these alone . are^assets in the hands of the administrator de bonis non. But, it is said, that the same section, § 45, gives to the administrator de bonis non, the same power and authority that is conferred upon an administrator in the first instance. This is true; so far as it relates to property to be administered, but it will not be contended that it extends in either case beyond what are assets. In other words, the statute confers upon an administrator de bonis non, the same power and authority over the assets left unadministered, that an original administrator possesses, in relation to the general assets of the estate. The only inquiry remaining then, is, what is the meaning of “ assets left unadministered ?” as used in these statutes. The plaintiff’s counsel insists, that it comprehends not only goods, &c„ of the testator which remain in specie, but, also the proceeds of all assets which have been converted into money by the executor. But the statute makes use of no new terms; the same words have been used as descriptive of the property which an administrator de bonis non, was to administer, from the first appointment.—In fact, these words have in another language, always formed a part of the very title of the character. ■ And they have repeatedly received, both in England and in this country, and even in this State, a judicial construction, and have always been adjudged to comprehend only goods, credits and effects which belonged to the original decedent, and which remain in kind —they have been adjudged not to comprehend notes received by previous executors in the sale of assets, or judgments recovered by him as such, upon debts due the testator (Grout v. Chamberlin, 4 Mass., 611; Dale v. Roosevelt, 8 Cow., 344—5). In the last case, decided in the court of errors, Spencer, J. says: - The case of Grout v. Chamberlin contains a true exposition of the common law respecting the privity between an administrator de bonis non and the estate of the last executor of the deceased upon the facts there presented. That was "a judgment recovered by the executor in his own name as such,. *446 which he might have reversed, and which Iiis personal representatives therefore might reverse, but which having become a species of assets in the hands of the executor,, reduced to posses* aion by him, could no longer be considered as unadministered effects of the deceased. A right of property in the "debt was acquired by the executor by the rendition of the judgment, and as his estate would be liable for its collection and application, his personal representatives only could enforce it, or take measures to render it available.” And again, the same judge says, on page 345 of the same case: “ A debt which has become •merged in a judgment recovered by an executor in his own name, is no longer a part of the estate of the testator, it is a part of that of the executor.” This case was decided in 1826, and shows that at that time, the law in this State in regard to what constituted unadministered assets, was as we insist it is now. And as evidence of a general recognition of the principle contained in these remarks of senator Spencer, as existing law, I refer to 2 Rev. /Siat., 449, §§ 13 and 18, allowing administrators de bonis non to have execution upon judgments recovered by any person who preceded them in the administration of the same estate, and also to bring and defend writs of error, upon any such judgment. These provisions, which were enacted for the first time at the revision of the statutes, 1830, effected a change in the law, by making uncollected judgments recovered by a previous executor or administrator in his name as such, assets to be administered by an administrator de bonis non. They do not constitute such judgments unadministered assets, but they give to the administrator de bonis non a right to have and administer certain property, to which by the common law he had no right; property other than that which constitutes unadministered assets. If it should be said that these provisions were adopted simply for the purpose of giving to the admin- • istrator de bonis non a control over that which was his before, but of which he could not avail, himself, for the reason that the title stood in the name of another, we would say in the first place, that the reason given for denying 1dm such control was, that the property was not his—and in the second place, if the property was his, he would by reason of the privity that would then exist between himself and his predecessor in regard to it, be able to make it available without such provisions. Dale v. *447 Roosevelt (case last cited), establishes the right of an administrator de bonis non, to a writ of error in his own name, on a judgment against his predecessor as administrator. If therefore, judgment recovered in the name of the executor, as such, on a debt due the testator, were net assets left unadministered by such executor, with no- reason can it be contended that money received by the executor in payment of debts due the testator is any portion of the assets left unadministered. And yet this constitutes the largest and most important class of property described in the complaint.
(c.) Neither has the statute law of this State conferred upon administrators de bonis non any right to maintain an action for an account against the representatives of a prior executor or administrator. The only statutes in any wise relating to an accounting, by or for a prior executor or administrator, are 2 Rev. Stat., 114, § 6, and 2 Rev. Stat., 95, § 74. The statute of 30 Chs. 2, ch. 7, contains the same provision as 2 Rev. Stat., 114, §.6, and the court (in Coleman v. McMurdo, 5 Rand., 51) said .in reference to it, that the executor or administrator of the first executor or administrator was thereby made chargeable to the creditors and distributees, and not to the administrator de bonis non. The statutes of Illinois contain the same provision as 2 Rev. Stat., 95, § 74 (Ill. Rev. Stat., ch. 109, § 75), and it was held in case of Marsh v. People (15 Ill., 285), that an administrator de bonis non could not compel the representatives of a deceased administrator to account for assets already already administered upon; aliier as to a removed administrator by reason of .such statute. But the statute in question does not authorize the administrator de bonis non to bring an action for an account even against a removed administrator or executor; .it merely empowers him to.institute proceedings for an accounting before the surrogate “inlike manner as is provided for a creditor,” but it gives him no interest in or control over any balance that may be found to be due from such prior representative. The j urisdiction of the surrogate in such accounting when so instituted, is limited to stating the account. The power to decree payment and distribution, with, which he js vested in,all other final accountings by executors and administrators, is in this case specifically withheld by section 78. The object of the statute is to enable the administra *448 tor de bonis non, by compelling the rendition of an account before the surrogate, to ascertain what moneys have been paid to the distributees, in order to know what amounts are due to them respectively; and also, to ascertain which of the invento- . ried assets remain unadministered. The citation in such case, so far as the administration de bonis non- is connected with the proceeding, is in effect simply an order for a discovery of evidence, which is necessary to a proper discharge of his trust. If a right of action for such account is conferred by this statute, then it necessarily follows that the surrogate has a right of action for the same purpose conferred upon him by the succeeding section (79), which authorizes him to issue such citation of his own motion. Since both of these statutes came into operation, a case arose in the court of chancery of this State (Goodyear v. Bloodgood, 1 Barb. Ch., 617), which was analogous to this action; the only difference being that the bill for accounting was filed by legatees ; and the objection was specifically taken by the defendant, who was the executor of the first executor, that the bill should have been filed by the administrator de bonis non. The chancellor held that the complainants were the proper parties; that they alone had any interest in compelling the executor of their testator’s executor to account for and pay over monies received by him in his life time; and that it was not necessary that the administrator de bonis non should be made a party to the suit in any form. 4. The act of 1858 (cli. 814), to which importance seems to be attached by the plaintiff’s counsel, is in no wise applicable. It applies only to cases of fraud on the part of executors and other trustees. Here, there is no pretence of fraud.
(d.) Ho right of action accrues to the plaintiff against the defendant as executrix of William B. Walton, in consequence of the possession by him at the time of his death of real estate, which was bid in by him as executor of Jonathan Walton on the foreclosure of a mortgage which belonged to said Jonathan Walton at the time of his death. 1. If this property be deemed to be an item of assets belonging to the said estate, which remained unadministered by the said William B. Walton, then the plaintiff, as administrator de bonis non, is entitled to and he has an action of ejectment against any person having it in possession. If the defendant is in the possession of it, *449 such action may be maintained against her; but not against her as executrix. She can hold, in such character, only property which is assets of the estate which she represents. The possession by her of all other property is in her own right, and all actions to recover the possession of such property must be brought against her individually. This has been twice decided in this very case; by Justice Rosekbans, at special term on demurrer to the first amended complaint, and by Justice Gould, on demurrer to the third amended complaint. And the principle was again recognized in the decision of this case at general term in the 4th district, when it was there on demurrer to the second amended complaint. 2. But if the property in question, should nobbe deemed to be a portion of the assets remaining unadministered, never having belonged to the the testator, it will fall under the previous subdivisions of this point; which show that the plaintiff has no right to it or control over it.
(e.) Ro action will lie against the defendant as executrix of William B. Walton, in consequence of the possession by him at the time of his death, of his own notes and bond, to Jonathan Walton, deceased, or their proceeds. 1. If the notes &c., remained in his hands at the time of his death, they were unadministered assets, and the plaintiff is entitled to them, and can maintain an action of trover or replevin against any person who has them and refuses to deliver- them up. Ro action however, will lie against the defendant as executrix even in-such case ; the principle which prohibits an action against her in such character, for the real estate, applies to the notes also. But there is .tiot enough alleged to maintain an action against ‘ her, even individually—no conversion is alleged. 2. But the property as described is not unadministered assets. Executors are chargeable with their debts to the testator from the time letters testamentary issued. But it is not alleged that the notes, &e., were in William B. Walton’s hands, at the time of his death—the allegation relates to notes, &c., or their proceeds. It cannot be said, therefore, of these items of property, that they were assets of the estate remaining in kind in the hands of the executor—and if not, they were not unadministered assets, and the plaintiff has no right to, or control over them. 3; The allegation being in the alternative, that notes, &c., or their proceeds, remained in the hands of William B. Walton at *450 the time-of his death, it is necessary to sustain the complaint, that the possession of either should constitute a cause of action.
Hogeboom, J.
If this case turns upon the allegations in the complaint, independent of those contained in the annexed schedule, I have no doubt that the action is well brought; and I do not see that they are so far varied by the contents of the schedule that that should alter the results at which we should otherwise arrive. Those allegations are explicit, that William B. Walton, had, at his death, in his hands, a. large portion of the assets of Jonathan Walton, unadministered; that the plaintiff has been duly appointed administrator of such unadministered assets, and that the defendant has been duly appointed and qualified as executrix of the last will and testament of William B. Walton, deceased, and refuses to account for such unadministered assets.
Prima facia and unexplained, I do not see why this does not make out a perfect cause of action, in favor of the plaintiff against the' defendant. . As there is no averment in the complaint that these assets have been collected, nor in either the complaint or the schedule, that the debts and expenses of administration of the estate of Jonathan Walton have been defrayed, there is nothing to show.but that these assets are absolutely needed for such purpose; and they can only be applied to that object by the duly, appointed legal representative of the estate of Jonathan Walton, deceased.
■Independent of this, and for all legal purposes, the plaintiff is the sole legal representative and possessor of the unadministered assets of said deceased, and is entitled by law to the custo ly of the property, and the possession of the assets, for the purpose of administration. He may bring suits to recover the property against any person in possession of it; trover or replevin, if it exists in specie in the condition it was at Jonathan Walton’s death, or assumpsit, or other appropriate action, if it lias been converted into money..
It may well be presumed from the allegations in the complaint, that the unadministered assets are in their original condition,—that is, in the shape they .were at the death of Jonathan Walton. If so, there does not seem to me a possible doubt that the plaintiff is entitled to these from any and every *451 person in whose possession they may be. They belong to the plaintiff ns owner,—owner in trust, it is true, for the purpose of administration, but, nevertheless, owner in fact. They are unadministered assets; they require administration; and no person in the world can perform this office upon them except the plaintiff. Indeed, if they have been rightfully or wrongfully converted into money, they are nevertheless unadministered assets of Jonathan Walton, deceased, are so charged to be in the complaint, and so admitted to be by the demurrer• and, therefore, rightfully belong to the plaintiff, and to the plaintiff alone. Even if they have been rightfully converted into money by the executional act of William B. Walton, this is but a partial administration of them; they have not been fully administered ; we are bound to assume that they require further administration, for they are charged and admitted to be unadministered assets ; and in the face of such an admission, we are not permitted to say that they require no further act of administration. They will be absolutely indispensable to pay debts of Jonathan Walton, deceased, and no one can employ them legitimately for such a purpose, except the plaintiff.
Wherever, therefore, they are found, in whomsoever’s possession they may be, such person is bound to deliver them over into the possession of the plaintiff.
Regarding this right of the plaintiff, therefore, as absolute and undeniable, it seems to follow, as a necessary consequence, as has just been stated, that every person in whose possession they may be, is bound to deliver them up, or account therefor; and, therefore, that the defendant is in no legal condition successfully to resist a demand of the same.
But conceding the plaintiff’s right to the possession of unadministered assets, it. is averred that the action is not well brought against the defendant, for these reasons. 1st. Because William B. Walton was, before his death, rightfully in possession of them, rightfully converted them into money, if he did so convert them, and rightfully retained them, for the purpose of paying debts and legacies, and distributive shares of Jonathan Walton’s estate. 2nd. Because there is no allegation in the complaint that these assets, in whatever shape they may be, ever came into the personal possession, custody or control of the defendant. 3rd. Because, if they are in the defendant’s . *452 possession, the action should be against her personally, and not as representative of the estate of William B. Walton, deceased.
It may and must he conceded, that William B. Walton, as executor of Jonathan Walton, had a right to the possession of the assets, a right to convert them into money, and a right, up to the period of his death, to appropriate them to all legitimate purposes of administration of the estate. But this latter office he did not perform ; and if he had converted a portion of the assets into money, he had only partially administered those assets; and assets are nnadministered, in the sense of the law, until the whole work of administration upon them is consummated. Administration of assets inrplies su'ch a complete disposition of them as not only to collect them from the debtor óf the estate, if they are in that condition, but finally to place them in the hands of the creditor, legatee or distributee to whom, after undergoing the process of administration, they finally belong. As before stated, they had not undergone this latter process; and we are obliged, in the state of facts in which the parties have presented the case to us, to assume that the assets required further administration.
While, then, it'might safely he conceded that William B Walton might rightfully retain the assets in his hands, even up to the period of his death, for the purpose of paying debts, legacies, and distributive shares, that right ceased at his death. It did not devolve upon his executor, but upon his successor in the trust; it did not go to the defendant, but to the plaintiff. The plaintiff, and not the defendant, succeeded him in the administration of the estate of Jonathan Walton.
The state of the assets at the death of William B. Walton, as developed in the schedule annexed to the plaintiff’s complaint is properly classified in the defendant’s points under three several heads.
1st. Monies received by William B. Walton, as executor of Jonathan Walton, received in payment of bonds, notes and other demands, belonging to the said Jonathan Walton at- the time of his death.
As to to these I have already expressed the opinion that they were only partially administered; that they were still, in the eye of the law, considered in connection with the admitted al *453 legations in the complaint, .unadministered assets, that in the latter charycter they necessarily passed, or rightfully would pass, into the legal custody and control of the plaintiff.
2nd. Two bonds and a note, executed by the said William B. Walton, to the said Jonathan Walton in his lifetime, or the amount thereof. . •
It does not expressly appear whether these had or had not been converted into money. If they had not been, the plaintiff was clearly entitled to the securities themselves, as a portion of the unadministered assets of Jonathan Walton. If they had been converted into money, then they are placed in the same category with the other partially administered assets above referred to, of the same estate.
3rd. Real estafe bid in by William B. Walton, as executor of Jonathan Walton, deceased, on a foreclosure by William. B. Walton, as such executor, of a mortgage executed on said real estate to Jonathan Walton; s'uch real estate, subsequent to such hid, being occupied by William B. Walton at the time of his death, and by the defendant, as his executrix, subsequently, and being still occupied by the latter.
This purchase was necessarily, in judgment of law, as it appears to have been according to the intention - of the purchaser, a purchase fur the benefit of the estate of Jonathan Walton. Such estate, or its legal representatives, would have a right to elect to take the benefit of such purchase, or to hold the purchaser responsible for the value.of the property, or the amount of the investment. Such election lias.not. been made. And the plaintiff, through the instrumentality of the court, has a right to hold the estate of William B. Walton accountable in some one or other of these modes for this property, and to require an account of the moneys due on the mortgage securities, an account of the rents and profits, and of the value of the estate.
Whether, therefore, we regard the assets in their -nnadministered form tis charged in the body of the complaint, or in their partially administered condition as set forth in the schedule appended to the complaint, there seems to be abundant aliment for such account as is demanded by the complaint in this action.
It is objected that there is no allegation in the complaint *454 that these assets ever came into the possession of the defendant. It is not necessary there should be. It is sufficient that they were in the hands of William B. Walton, unadministered, at the time of his death. That makes his estate liable to account for the same. The defendant is the representative of that estate, and as such the proper party to answer such a charge. But I think the legal presumption without an express allegation is that the property in the possession of William B. Walton, at the time of his death, passed into the hands of his executrix, and that if, in fact, it be otherwise, it is with her to rebut that legal presumption by an express allegation to that effect in the answer to the complaint. Further than this, it expressly appears therein, by the schedule annexed to the complaint, that she is in possession of them as his executrix of the real estate bid in on the mortgage foreclosure, and there is, therefore, a portion of the property for which she is liable to account.
3rd. It is further objected that the plaintiff’s remedy, if available against the defendant at all, is so only against her personally, and not as executrix-of the will of William B. Walton, deceased. This is not an effectual answer to the xvhole complaint for two reasons. 1st. Because as to such property as was in the hands of William B. Walton unadministered at the time of his death, his estate, and consequently the defendant as executrix, is liable for it. If, therefore, the defendant did not come into possession of the property, the estate, and consequently herself.as its representative, is responsible for it as being in the possession of William at the time of his death; If it did pass into her possession as executrix, there is an increased propriety that as such executrix she should be accountable for it. This is. sufficient to show that as to some portion of these assets she is properly prosecuted as executrix.
Whether as to other portions of them, for example, goods and chattels, bonds and securities, which are in her hands in specie, in the same condition in which they were at the death of Jonathan Walton (if there be any such) she may not be liable for them individually, it is not necessary to determine. I think, however, she would also be liable for them in her representative capacity, for she recovered them as such, she holds them as such, she claims them as such. As to-real estate, the *455 charge in the complaint is that she is in possession of it as executrix of William B. Walton, deceased; and so far it seems to be manifestly proper to hold her to account in her representative character.
I, therefore, regard the action as properly instituted, and the complaint as showing a good cause of action. I think the judgment of the special and general term of the supremé court should .both be reversed with costs, and judgment should be given for the plaintiff on the demurrer, with leave to the defendant to withdraw the same and answer on payment of costs.
Selden, J.,—dissented.